UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

In re: Chapter 7

KEERTHI RANASINGHE, Case No. 23-42430-ess

Debtor.

--------------------------------------------------------------x

KEERTHI RANASINGHE,

Plaintiff, Adv. Pro. No. 23-01112-ess

-against-

U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR MORGAN STANLEY MORTGAGE LOAN TRUST 2007-11AR,

PHH MORTGAGE AS SERVICER FOR U.S. BANK NATIONAL ASSOCIATION, SUCCESSOR-IN-INTEREST TO BANK OF AMERICA, N.A., SUCCESSOR-BY-MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR MORGAN STANLEY MORTGAGE LOAN TRUST 2007 11AR, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2001-11AR,

Defendants.

--------------------------------------------------------------x

**MEMORANDUM DECISION ON THE**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Appearances:

Keerthi Ranasinghe
224 Holden Boulevard
Staten Island, NY 10314
*Debtor, pro se*

Kevin R. Toole, Esq.
Robertson, Anschutz, Schneid, Crane & Partners
900 Merchants Concourse (Suite 310)
Westbury, NY 11590
*Attorneys for U.S. Bank National Association as Trustee for Morgan Stanley Mortgage Loan Trust 2007-11AR and PHH Mortgage Corporation as Servicer for U.S. Bank National Association, Successor-in-*

*Interest to Bank of America, N.A., Successor-by-Merger to LaSalle Bank National Association, as Trustee, for Morgan Stanely Mortgage Loan Trust 2007-11AR, Mortgage Pass-Through Certificates, Series 2007-11AR*

**Introduction**

This adversary proceeding and Motion for Summary Judgment are the latest chapters in a long-running mortgage foreclosure dispute spanning nearly fourteen years. It has been the subject of at least two foreclosure actions in New York Supreme Court, commenced in December 2012 and October 2016, the July 2023 Chapter 7 bankruptcy case of Keerthi Ranasinghe, and now, this adversary proceeding brought by Mr. Ranasinghe against the mortgage lenders nearly three years ago, in November 2023.

Litigation continues in the New York State Court action, where Mr. Ranasinghe's appeal of the Judgment of Foreclosure and Sale is pending. By contrast, Mr. Ranasinghe's Chapter 7 bankruptcy case is substantially complete, the mortgage lenders sought and received relief from the bankruptcy automatic stay in November 2023, to continue the state court proceedings, and Mr. Ranasinghe received a bankruptcy discharge in February 2024.

This adversary proceeding has followed a long path of its own. The initial Complaint, filed in November 2023, was comprised of several exhibits, but did not include a complaint or adversary proceeding cover sheet. That was followed in December 2023 by the amended Complaint. Following a period of discovery and case management conferences with the Court, in May 2025, this Summary Judgment Motion was made. Several months later, in October 2025, counsel for Mr. Ranasinghe indicated his intention to withdraw from representing him, and in December 2025, the Court granted his motion to withdraw. But again, time passed, and in March 2026, the Court entered an order formally relieving Mr. Ranasinghe's counsel.

The submission of briefs and arguments on this Summary Judgment Motion has also occurred over an extended period, beginning in May 2025, with argument in December 2025, supplemental briefing in April 2026, and a renewed argument in June 2026.

And now, with the benefit of a very full record, the Court turns to the question posed by the Summary Judgment Motion: have the mortgage lenders shown that they are entitled to judgment as a matter of law on the claims set forth in the Amended Complaint? As explained below, the Court concludes that they have met their burden to show that there is no genuine dispute as to a material fact, and they are entitled to judgment dismissing the Amended Complaint with prejudice.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to Judiciary Code Sections 157 and 1334, and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York. This is a core proceeding pursuant to Judiciary Code Sections 157(b)(2)(A), 157(b)(2)(H), 157(b)(2)(I), and 157(b)(2)(K). Venue is proper in this Court pursuant to Judiciary Code Sections 1408 and 1409.

## Selected Background and Procedural History

*The Debtor's Chapter 7 Case*

On July 11, 2023, Keerthi Ranasinghe, by counsel, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *See In re Keerthi Ranasinghe*, Case No. 23-42430, ECF No. 1.

On September 22, 2023, PHH Mortgage Corporation ("PHH"), as Servicer for U.S. Bank National Association, Successor-in-Interest to Bank of America, N.A, Successor-by-Merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2007-11AR, Mortgage Pass-Through Certificates, Series 2007-11AR ("U.S. Bank", and together with PHH, the "Secured Creditor" or "Movants") filed a motion for stay relief (the "Stay Relief

Motion") with respect to Mr. Ranasinghe's residence located at 224 Holden Boulevard, Staten Island, New York 10314 (the "Property"). *See In re Keerthi Ranasinghe*, Case No. 23-42430, ECF No. 36.

On November 14, 2023, the Court held a hearing on the Stay Relief Motion, at which Mr. Ranasinghe, by counsel, and the Secured Creditor, appeared and were heard, and the Court granted stay relief. *See In re Keerthi Ranasinghe*, Case No. 23-42430, ECF entry dated November 14, 2023. And on November 17, 2023, the Court entered an Order modifying the automatic stay, to permit the Secured Creditor to pursue its rights under applicable law with respect to the Property. *See In re Keerthi Ranasinghe*, Case No. 23-42430, ECF No. 46.

On February 1, 2024, the Court entered an Order discharging Mr. Ranasinghe. *See In re Keerthi Ranasinghe*, Case No. 23-42430, ECF No. 49. As of the date of this Memorandum Decision, Mr. Ranasinghe's Chapter 7 bankruptcy case remains open.

*The New York State Court Foreclosure Actions*

Some background as to the New York State foreclosure actions concerning the Property provides helpful context for the issues before the Court on this motion.

On December 13, 2012, U.S. Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2007-11AR, Mortgage Pass-Through Certificates, Series 2007-11AR (the "2012 Foreclosure Action Plaintiff") filed a foreclosure action with respect to the Property in Supreme Court of the State of New York, County of Richmond, against Jayantha C. Weerasinghe, Mr. Ranasinghe, Environmental Control Board, NYC Parking Violation, Capital One Bank (USA), N.A., Criminal Court of the City of New York, and "John Does #1" through "John Doe #12," the last twelve names being fictitious and unknown to plaintiff, the persons of parties intended being the tenants, occupants, persons or corporations, if any, having or claiming

an interest in or lien upon the premises, described in the complaint (the "2012 Foreclosure Action Defendants"), Index Number 12-130933 (the "2012 Foreclosure Action"). *See* Opposition to the Summary Judgment Motion, ECF No. 34 (the "Summ. Judg. Opp."), Exh. A (2012 Foreclosure Action Summons and Complaint).

On January 18, 2013, the 2012 Foreclosure Action Defendants filed a motion to dismiss the 2012 Foreclosure Action on grounds, among others, that the 2012 Foreclosure Action Plaintiff did not have standing to bring the action. *See* Summ. Judg. Opp. Exh. B (2012 Foreclosure Action Order of Dismissal), at 2. On or about August 21, 2013, the New York State Supreme Court granted the motion to dismiss because, among other reasons, "[w]hile plaintiff has provided credible information, a recorded assignment, regarding the assignment of the mortgage prior to the commencement of the action, it has not submitted a similar document or evidence with regard to the note." Summ. Judg. Opp. Exh. B (2012 Foreclosure Action Order of Dismissal). at 2. Accordingly, the New York State Supreme Court granted the State Court Defendants' motion to dismiss the 2012 Foreclosure Action without prejudice. *See id.*

On October 24, 2016, U.S. Bank filed a second foreclosure action with respect to the Property in Supreme Court of the State of New York, County of Richmond, against Mr. Weerasinghe, Mr. Ranasinghe, New York City Environmental Control Board, and "John Does #1" through "John Doe #10," the last 10 names being fictitious and unknown to plaintiff, the persons of parties intended being the persons or parties, if any, having or claiming an interest in or lien upon the mortgaged premises described in the complaint, Index Number 135822/2016 (the "2016 Foreclosure Action"). *See* Summ. Judg. Opp. Exh. C (2016 Foreclosure Action Summons and Complaint). And on March 8, 2022, the New York Supreme Court entered a judgment of foreclosure and sale in the 2016 Foreclosure Action (the "2022 Judgment of

Foreclosure and Sale"). *See* Motion for Summary Judgment, ECF No. 33 (the "Summ. Judg. Mot."), Exh. D (2022 Judgment of Foreclosure and Sale).

*This Adversary Proceeding*

On November 30, 2023, Mr. Ranasinghe, by counsel, commenced this adversary proceeding by filing a complaint (the "November 2023 Complaint") against U.S. Bank and PHH. ECF No. 1. This filing includes several exhibits, but it does not include a complaint or an adversary proceeding cover sheet. *See id.* Those exhibits include this Court's Order modifying the automatic stay, the summons and complaint in the 2012 Foreclosure Action, including a description of the Property, the note and an adjustable rate rider and assignment of mortgage, but no underlying mortgage documents, the 2012 Foreclosure Action Plaintiff's Sur-Reply in the 2012 Foreclosure Action, the order of dismissal in the 2012 Foreclosure Action, and the deed to the Property. *Id.* As the docket reflects, Mr. Ranasinghe's counsel was contacted and asked to file an amended complaint and adversary proceeding cover sheet. *See* ECF entry dated December 1, 2023.

On December 5, 2023, Mr. Ranasinghe, again by counsel, filed an amended complaint, titled "Complaint to Determine Dischargeability of Debt." *See* Amended Complaint, ECF No. 3 (the "Amended Complaint" or "Am. Compl."). As described below, the Amended Complaint sets forth four claims for relief against U.S. Bank and PHH. *See* Am. Compl. ¶¶ 88-114. He also filed an adversary proceeding cover sheet. *See* ECF No. 4.

On June 10, 2024, the Secured Creditor filed a stipulation, signed by Mr. Ranasinghe, by counsel and U.S. Bank and PHH, in which Mr. Ranasinghe withdrew his First and Second Claims for Relief. *See* Stipulation, ECF No. 17 (the "Stipulation"), at 2. The Stipulation also provides that Mr. Ranasinghe, U.S. Bank, and PHH will "comply with any . . . rule 26 discovery

served upon them by the other party in a timely manner pursuant to relevant rules, or as agreed to by the . . . parties, or as ordered by the Court." *Id.* On March 30, 2026, the Court "so-ordered" the Stipulation, withdrawing the First and Second Claims for Relief. So-Ordered Stipulation of Dismissal, ECF No. 45 (the "So-Ordered Stipulation"), at 2.

And on September 27, 2024, Mr. Ranasinghe, by counsel, filed a stipulated Joint Discovery Control Plan, signed on behalf of Mr. Ranasinghe by counsel, and by U.S. Bank and PHH by their counsel, setting forth a schedule for serving discovery including a timeframe for serving requests for production of documents, an anticipated list of parties to be deposed, a timeframe for serving expert reports, and a discovery deadline of January 30, 2025. *See* ECF No. 19. The Joint Discovery Control Plan was so-ordered by the Court on October 17, 2024. *See* ECF No. 20.

*The Allegations of the Amended Complaint*

In the Amended Complaint, Mr. Ranasinghe states that as of about February 13, 2007, he owned a 99 percent interest, and Mr. Weerasinghe owned a one percent interest, in the Property. Am. Compl. ¶ 12. Mr. Ranasinghe asserts that on February 13, 2007, Mr. Weerasinghe executed a note (the "Note") in favor of First National Bank of Arizona ("First National") with a principal amount of $380,000. Am. Compl. ¶¶ 13-14. And Mr. Ranasinghe alleges that he did not execute the Note and has never been a party to the Note. Am. Compl. ¶ 16. In addition, he avers that "the owner Keerthi Ranasinghe who owned 99% of the share of the [P]roperty has not executed any Note or was not a party to the said Note." *Id.* At the same time, Mr. Ranasinghe alleges that "the said Mortgage identified Keerthi Ranasinghe and Jayantha Weerasinghe as 'Brower'." Am. Compl. ¶ 18. That is, at least indirectly, the Amended Complaint identifies Mr. Ranasinghe as a

mortgagor, though not a borrower, with respect to the Note and Mortgage secured by the Property. *See id.*

The Amended Complaint also states that "[t]he original lender of the said mortgage was First National Bank of Arizona the servicer of the mortgage was GMAC." Am. Compl. ¶ 20. And it states that the servicer of the mortgage changed, from GMAC to Saxon Mortgage. *See* Am. Compl. ¶¶ 20-21, 23.

Mr. Ranasinghe alleges that following a default, Mr. Weerasinghe requested a modification from the servicer, and that following an additional transfer of the Note, "[t]he completed Modification agreement was received by the Plaintiff Keerthi Ranasinghe and Jayantha Weerasinghe dated August 3, 2010." Am. Compl. ¶ 28. *See* Am. Compl. ¶¶ 24-27. In that modification, the lender was identified as "'U.S. National Association as trustee for Morgan Stanley Mortgage Loan Trust 2007-11AR', which was a different name than the original lender 'the First National Bank of Arizona.'" Am. Compl. ¶ 29. After that, the Amended Complaint states, in October 2011, another entity, "OCWEN acquired the loan servicing company Saxon Mortgage Services Inc." Am. Compl. ¶ 30. And then, "[t]he Borrowers again defaulted the Loan installments again." Am. Compl. ¶ 31.

Mr. Ranasinghe next points to the circumstances of the 2012 Foreclosure Action and avers that it "was commenced by a stranger but not the original lender." Am. Compl. at p. 5. He asserts that "[t]he original lender did not file any foreclosure action" and instead, that "[a] stranger," U.S. Bank, brought a foreclosure action in New York Supreme Court, Richmond County, against Mr. Weerasinghe and him. Am. Compl. ¶¶ 32-33. And in that action, "[t]he court granted the Motion to dismiss filed by the Defendant for lack of standing." Am. Compl. ¶ 37.

The Amended Complaint next describes the 2016 Foreclosure Action commenced by U.S. Bank. Am. Compl. at p. 6. It states, "[o]n October 24, 2016, the Second foreclosure action was commenced by a new party other than the original lender. This new party was not the party who commenced the first foreclosure action." Am. Compl. ¶ 40. Again, "[t]he defendants were, Jayantha Weerasinghe and Keerthi Ranasinghe." Am. Compl. ¶ 41.

Mr. Ranasinghe alleges that "[t]he Complaint has attached a copy of the original Note and separately filed two Allonges." Am. Compl. ¶ 43. He also avers that "[t]he Note was transferred from one trust to another Trust. But No trust documents were attached with [the] complaint." Am. Compl. ¶ 46. The Amended Complaint also describes a "new Allonge [that] transferred the Note to the Bank of Nevada." Am. Compl. ¶ 49. And it states, "all three Allonges created misconduct[,] as the title to the Note was not clear and the Allonges were not legally valid on the face of the documents and concluded the Allonges were fabricated." Am. Compl. ¶ 50.

The Amended Complaint also sets forth certain of the circumstances leading to the dismissal of the 2012 Foreclosure Action. It states that the complaint in that action "contained the original Note independently without any endorsement or Allonges." Am. Compl. ¶ 54. It also states that the court "concluded that there was no endorsement or any allonges attached to the Original Note" and that "[t]he original Note was independently sitting in the Complaint." Am. Compl. ¶¶ 57-58. And it avers that "[t]he court dismissed the action as the Note Holder could not present to the Court to prove that the Note was assigned on July 27, 2012, as the attorney informed the Court." Am. Compl. ¶ 59. This, Mr. Ranasinghe alleges, "established that no endorsement or allonges ever existed when the case was dismissed on August 21, 2013," and "this decision will become the law of the case." Am. Compl. ¶¶ 60-61. And he states that

"Defendants have not challenged or appealed against the decision of the First foreclosure action by Supreme Court," and that, under the doctrine of collateral estoppel, "the Bankruptcy Court has to accept the decision of the first Foreclosure action and accept the issues that were resolved by the first foreclosure action." Am. Compl. ¶¶ 62, 67. *See* Am. Compl. ¶¶ 63-66.

Finally, Mr. Ranasinghe advances several allegations that are, in substance, assertions or arguments for the relief that he seeks. He states that "Debtor Keerthi Ranasinghe has a 99% ownership interest in the [Property, and] therefore has interest in the Bankruptcy Estate." Am. Compl. at p. 9. He also repeats that Mr. Weerasinghe "has only 1% interest in the [Property]," that Mr. Weerasinghe "has signed the Promissory Note and liable for the debt personally. Debtor Keerthi Ranasinghe was not liable for the debt," and "[t]herefore, [the] Bankruptcy should declare that Keerthi Ranasinghe has [a] 99% share in the estate." Am. Compl. ¶¶ 69-71.

Next, Mr. Ranasinghe alleges that he "has a surplus in the Bankruptcy Estate and has claimed in the schedule that he owned the [Property]." Am. Compl. at p. 10. The Amended Complaint states that "[t]he Debtors . . . have provided evidence to establish that there is a possibility of a surplus in the bankruptcy estate. If the [D]ebtor [is] successful in the Complaint he is entitled to the value of the Property." Am. Compl. ¶ 72. He again asserts that he "did not sign the Note and is not liable for the debt." Am Compl. ¶ 74. *See* Am. Compl. ¶ 75. By contrast, Mr. Ranasinghe asserts, Mr. Weerasinghe "executed the Promissory Note when he had 1% ownership interest in the said property." Am. Compl. ¶ 76.

Mr. Ranasinghe also states that, in substance, it may be assumed that he "has [liability] under the Mortgage as he signed the Mortgage." Am. Compl. at p. 11. But, he also avers, "after filing bankruptcy the debtor was discharged in a Chapter 7." *Id.* And he asserts that "[a] bankruptcy discharge releases the debtor from personal liability for certain specified types of

debts." Am. Compl. ¶ 78. He also states, "[t]he Bankruptcy Court should discharge the Debtor's debt that arises under the Mortgage deed and or any decision in a foreclosure action." Am. Compl. ¶ 81.

And Mr. Ranasinghe again asserts that he "has a surplus in the Bankruptcy Estate and has claimed in the schedule that he owned the [Property]." Am. Compl. at p. 11. He alleges that "[t]he Debtors . . . have provided evidence to establish that there is a possibility of a surplus in the bankruptcy estate. If the [D]ebtor [is] successful in the Complaint he is entitle[d] to the value of the Property." Am. Compl. ¶ 82. And he states again that he "did not sign the Note and is not liable for the debt." Am. Compl. ¶ 84. Mr. Ranasinghe also avers that "[a]s a security**[,]** non-party Jayantha C. Weerasinghe signed the Mortgage. Therefore, the non-party was liable for his share of ownership in the said property." Am. Compl. ¶ 87.

In the First Claim for Relief, Mr. Ranasinghe seeks a declaratory judgment that he "was discharged against the debt of the creditor." Am. Compl. at p. 12. *See* Am. Compl. ¶¶ 88-94. He asks "the [C]ourt to declare that the [D]ebtor was discharged after filing [C]hapter 7 Bankruptcy," among other relief. Am. Compl. ¶ 93. As noted above, Mr. Ranasinghe has now withdrawn the First Claim for Relief, and it has been dismissed. *See* Summ. Judg. Opp. at 5; So-Ordered Stipulation at 2.

In the Second Claim for Relief, Mr. Ranasinghe seeks a declaratory judgment that U.S. Bank "has no claim and interest against" him. Am. Compl. at p. 13. *See* Am. Compl. ¶¶ 95-106. He refers to several exhibits attached to the Amended Complaint and asserts "[t]his Court has a duty to accept the decision of the first foreclosure action to dismiss the creditor's claim" and that "[t]he creditor or their predecessor [is] not a legitimate party of interest as claimed by the creditor before the Bankruptcy Court." Am. Compl. ¶¶ 104, 106. As noted above, Mr.

Ranasinghe has now also withdrawn the Second Claim for Relief and it has been dismissed. *See* Summ. Judg. Opp. at 5; So-Ordered Stipulation at 2.

In the Third Claim for Relief, Mr. Ranasinghe seeks an order directing the Chapter 7 Trustee "to avoid any transfer of property of the [D]ebtor to the creditor that would be voidable under applicable law." Am. Compl. at p. 14. *See* Am. Compl. ¶¶ 107-11. He cites Bankruptcy Code Section 544(b)(1), and notes that this "confers upon the trustee the rights and powers of a creditor of the debtor, including the power to 'avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable' by such creditor." Am. Compl. ¶ 109.

Mr. Ranasinghe also asserts that "[a]ssuming that the Creditor has a claim against the [D]ebtor's estate. It was unsecured as the [D]ebtor did not sign the Promissory Note and that would be voidable under applicable law. The trustee may recover for the benefit of the estate." Am. Compl. ¶ 108. And he asks that "the [C]ourt . . . avoid transfer[ring] the [D]ebtor's property to the creditor and issue an order for the trustee to intervene in the [D]ebtor's estate." Am. Compl. ¶ 111.

And finally, in the Fourth Claim for Relief, Mr. Ranasinghe seeks an order under New York Debtor and Creditor Law ("NY DCL") Section 274 directing the Chapter 7 Trustee "to demand from the creditor to prove the claim by a preponderance of the evidence." Am. Compl. at p. 16. He recites the text of NY DCL Section 274, including that it sets forth a requirement that a party seeking relief under this Section "has the burden of proving the elements of the claim for relief by a preponderance of the evidence." Am. Compl. ¶ 113. And he asks the Court to "issue an order for the trustee to intervene in the [D]ebtor's estate." Am. Compl. ¶ 114.

*The Summary Judgment Motion*

On May 29, 2025, the Movants U.S. Bank and PHH filed this Motion for Summary

Judgment Dismissing Adversary Proceeding Amended Complaint with Prejudice.

As to the First and Second Claims for Relief, the Movants argue that these are moot and need not be addressed, as they are the subject of the parties' Stipulation, and because Mr. Ranasinghe has already received a discharge in his Chapter 7 bankruptcy case. Summ. Judg. Mot. at 2. *See* So-Ordered Stipulation at 2. This is undisputed, and the Court will not address the First and Second Claims for Relief further here.

As to the Third Claim for Relief and Fourth Claims for Relief, the Movants argue that they are entitled to summary judgment and dismissal with prejudice on these claims because, as described in greater detail below, "'there is no genuine dispute as to any material fact and . . . [they] are entitled to judgment as a matter of law.'" Summ. Judg. Mot. at 5 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

On July 1, 2025, Mr. Ranasinghe, by counsel, filed Opposition to the Summary Judgment Motion. In the Opposition, Mr. Ranasinghe acknowledges that he no longer seeks relief under the First and Second Claims for Relief and that those claims are moot, based on the parties' Stipulation, and because he has received a discharge in his bankruptcy case. Summ. Judg. Opp. at 5. *See* So-Ordered Stipulation at 2.

As to the Third Claim for Relief and Fourth Claims for Relief, as described in greater detail below, Mr. Ranasinghe responds that summary judgment is not warranted, on grounds, among others, that the 2022 Judgment of Foreclosure and Sale entered in the 2016 Foreclosure Action was precluded by the dismissal of the 2012 Foreclosure Action due to a lack of standing, and that there remain outstanding discovery disputes. *See* Summ. Judg. Opp. at 5-15.

On July 8, 2025, the Court held a continued pre-trial conference and a conference on the Summary Judgment Motion, at which Mr. Ranasinghe and the Movants appeared and were

heard. At that conference, the Court set a date for a continued pre-trial conference and an in-person argument on the Summary Judgment Motion for August 13, 2025, later rescheduled to accommodate the parties' and the Court's schedule to October 29, 2025.

On October 29, 2025, the Court held a continued pre-trial conference and hearing on the Summary Judgment Motion, at which Mr. Ranasinghe and the Movants appeared and were heard. The Court set a date for a further continued pre-trial conference and in-person argument on the Summary Judgment Motion for December 1, 2025.

The Court held a continued pre-trial conference and hearing on the Summary Judgment Motion on December 1, 2025. At that hearing, the Court heard argument on the Summary Judgment Motion from the Movants and from Mr. Ranasinghe, appearing *pro se*. At the December 1, 2025, hearing, the Court closed the record and reserved decision.

*The Motion To Withdraw as Counsel to the Debtor*

At the October 29, 2025, continued pre-trial conference and continued hearing on the Summary Judgment Motion, Mr. Ranasinghe's counsel indicated his intention to withdraw as counsel of record. The Court directed Mr. Ranasinghe's counsel to file a motion to withdraw by October 31, 2025, and allowed Mr. Ranasinghe to file a notice of appearance of new counsel by November 5, 2025. Mr. Ranasinghe did not do so by that date, and as of the date of this Memorandum Decision, he continues to proceed without counsel.

Later that same day, Mr. Ranasinghe's counsel filed a First Motion to Withdraw as Attorney. *See* ECF No. 35 (the "Motion to Withdraw"). And on November 17, 2025, the Court entered an Order scheduling a hearing on the Motion to Withdraw for November 24, 2025. ECF No. 38.

On November 24, 2025, the Court held a hearing on the Motion to Withdraw, at which

counsel to Mr. Ranasinghe appeared and was heard. Noting that counsel to Mr. Ranasinghe did not serve the Motion to Withdraw on the Chapter 7 Trustee or the Office of the United States Trustee, the Court directed Mr. Ranasinghe's counsel to make that service and adjourned the hearing on the Motion to Withdraw to December 1, 2025.

On December 1, 2025, prior to the scheduled hearing, Mr. Ranasinghe's counsel filed a letter requesting to be excused from appearing at the December 1, 2025, hearing on the Motion to Withdraw due to "an unexpected personal situation." ECF No. 41. As a result, the Court held a continued pre-trial conference, hearing on the Motion to Withdraw, and oral argument on the Summary Judgment Motion, at which Mr. Ranasinghe, his brother, Prithal Ranasinghe, and the Movants appeared and were heard, and Mr. Ranasinghe's counsel did not appear.

On consent of Mr. Ranasinghe, and in the absence of opposition, the Court granted Mr. Ranasinghe's counsel's Motion to Withdraw and directed him to submit a proposed order relieving him as counsel, and also suggested, in the alternative, that the Court could enter an order in light of Mr. Ranasinghe's counsel's circumstances. December 1, 2025, hearing transcript, ECF No. 42 (the "Dec. 1, 2025, Tr."), at 5. On March 13, 2026, the Court entered an Order granting the Motion to Withdraw and permitting Mr. Ranasinghe's counsel to withdraw as counsel of record to him. ECF No. 44.

*Supplemental Proceedings*

On March 31, 2026, the Court entered an order restoring the Movants' Motion for Summary Judgment to the calendar and requested that the parties supplement the record to address the status of any pending appeal of the 2022 Judgment of Foreclosure and Sale, to address the question of whether the pendency of an appeal in state court affects the application of the *Rooker-Feldman* doctrine, and for Mr. Ranasinghe to supplement his Opposition to describe

the relief that he seeks in the Third Claim for Relief and the Fourth Claim for Relief. ECF No. 46 (the "Order Restoring Motion"). Pursuant to this Order, on April 10, 2026, the Movants filed a supplemental motion for summary judgment. ECF No. 48 (the "Supplemental Motion for Summary Judgment" or "Supp. Summ. Judg. Mot."). That same day, Mr. Ranasinghe filed a supplemental brief to the Opposition. ECF No. 49 (the "Supplemental Opposition" or "Supp. Opp."). And finally, on April 24, 2026, Mr. Ranasinghe filed a response to the Supplemental Motion for Summary Judgment. ECF No. 53 (the "Opposition to the Supplemental Motion for Summary Judgment" or "Opp. to Supp. Summ. Judg. Mot.").

On June 8, 2026, the Court held a continued pre-trial conference and oral argument on the Supplemental Motion for Summary Judgment and the Opposition to the Supplemental Motion for Summary Judgment, at which Mr. Ranasinghe and the Movants appeared and were heard. At that hearing, the Court closed the record and reserved decision.

*The Supreme Court's Decision in T.M. v. University of Maryland Medical System Corporation*

On June 18, 2026, the Supreme Court rendered its decision in *T.M. v. University of Maryland Medical System Corporation*, 608 U.S. __, 146 S. Ct. 1739 (2026) ("*T.M.*"). In *T.M.*, the Court considered "whether the [*Rooker-Feldman* doctrine] bars suit when the state-court judgment at issue is subject to further review in state appellate proceedings." *T.M.*, 146 S. Ct. at 1744. The Supreme Court held that the *Rooker-Feldman* doctrine applies to a federal proceeding even when the state court judgment is pending appeal in state court, because federal district courts "are 'empowered to exercise [only] original, not appellate, jurisdiction.'" *T.M.*, 146 S. Ct. at 1747 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005)) (alteration in original).

*The Movants' Arguments in Support of Summary Judgment*

The Movants advance several arguments in support of their request that this Court enter summary judgment on Mr. Ranasinghe's Third Claim for Relief and Fourth Claims for Relief and dismiss the Amended Complaint with prejudice.

At the outset, the Movants argue that U.S. Bank was the named plaintiff in the 2016 Foreclosure Action, in which the New York Supreme Court entered a valid judgment of foreclosure and sale, and in doing so, determined that U.S. Bank had standing as the holder of the Note and assignee of the mortgage. Summ. Judg. Mot. at 5, 7. As they state, "[t]he Property and the Mortgage Loan are the subject of the [2016 Foreclosure Action]. The Supreme Court determined the propriety of enforcing the Mortgage Loan based on the standing of the Foreclosure Plaintiff as the holder of the Note and the Assignee of the Mortgage." Summ. Judg. Mot. at 5. They point to the 2022 Judgment of Foreclosure and Sale dated February 28, 2022, entered by New York Supreme Court, Richmond County, in the 2016 Foreclosure Action. *See* Summ. Judg. Mot. at 4 and Exh. D (2022 Judgment of Foreclosure and Sale).

And the Movants state:

> The Supreme Court would have had to determine the forgoing rights of U.S. Bank and its standing to prosecute the Foreclosure Action before determining to grant to it the remedies under the Foreclosure Judgment. Accordingly, U.S. Bank was entitled to have the foreclosure Judgment entered, and the Supreme Court concurred in do so.

Summ. Judg. Mot. at 7-8.

The Movants also argue that Mr. Ranasinghe's claims with respect to the Note and Mortgage are barred by the *Rooker-Feldman* doctrine and the doctrines of *res judicata* and collateral estoppel. *See* Summ. Judg. Mot. at 8-10. They observe:

> Any issue or contention the Debtor may have regarding the Mortgage Loan, and any attempt he may pursue to have the Court or the Trustee examine

> the Note, Mortgage, Mortgage Loan and the validity of the lien against the Property are barred by multiple preclusive doctrines; *res judicata*, collateral estoppel and the *Rooker-Feldman* Doctrine . . . .

Summ. Judg. Mot. at 8.

And the Movants note that Mr. Ranasinghe appeared in and contested the 2016 Foreclosure Action, and that "the defendants therein (Borrower and/or Debtor) attempted three times to overturn the Foreclosure Judgment." Summ. Judg. Mot. at 9. These attempts included "a motion to dismiss . . . that was denied on December 9, 2021 . . . a motion to vacate . . . that was denied on October 11, 2022 . . . [and] a motion to reargue or for reconsideration . . . that was denied on March 30, 2023." Summ. Judg. Mot. at 9-10. And then, "[a]fter the third failed attempt at vacating the Foreclosure Judgment, Debtor commenced the [bankruptcy case] shortly after the third denial by the Supreme Court to gain the benefit of the automatic stay." Summ. Judg. Mot. at 10.

As to the finality of the foreclosure judgment, the Movants state, "there can be no question that the Foreclosure Judgment is . . . final. There was no appeal taken from the Foreclosure Judgment, and the Debtor has not obtained any stay of the effectiveness of the Foreclosure Judgment either from the Supreme Court, or the Appellate Division." *Id*.

That is, in the context of this history, and in view of the many attempts already made by Mr. Ranasinghe in New York Supreme Court to overturn the 2022 Judgment of Foreclosure and Sale, the Movants argue that it is final, binding, and valid.

Turning to the Amended Complaint's Claims for Relief, the Movants note that Mr. Ranasinghe and the Movants have stipulated that the First and Second Claims for Relief have been "deemed to be moot as a result of the Order of Discharge entered in February 1, 2024," in Mr. Ranasinghe's bankruptcy case. Summ. Judg. Mot. at 2. "Accordingly, only the third and

fourth causes of action remain at issue between the parties and are before the court for determination." *Id*.

As to the Third Claim for Relief, the Movants note that "[t]here is little coherence to [the Amended Complaint's] contentions and arguments." Summ. Judg. Mot. at 10. As to Mr. Ranasinghe's references to "materials" and "labor," they suggest that Mr. Ranasinghe "somehow is connecting such materials and labor provided to the conveyance of the mortgage lien on the Property that was created with the[] recording of the Mortgage." *Id.* And to the extent that Mr. Ranasinghe seeks to avoid U.S. Bank's lien interest in the Property, the Movants again assert "that any attack on the Mortgage lien is prohibited under [*Rooker-Feldman*, *res judicata*, and collateral estoppel]." Summ. Judg. Mot. at 11.

As to the Fourth Claim for Relief, the Movants argue it is "devoid of any law that would be the basis for any relief this Court could grant." *Id*. They acknowledge that the New York Uniform Voidable Transactions Act allows a creditor to avoid a transaction that was made in furtherance of a plan to hinder or delay creditors, and argue that it does not provide grounds for Mr. Ranasinghe to overturn the 2022 Judgment of Foreclosure and Sale entered in the 2016 Foreclosure Action. *Id*.

Finally, in the Summary Judgment Motion, the Movants address the limits of the Chapter 7 Trustee's discretion and authority. *Id.* The Movants state that while the Chapter 7 Trustee's powers under the Bankruptcy Code are broad, the Chapter 7 Trustee does not have the discretion to avoid the 2022 Judgment of Foreclosure and Sale entered in the 2016 Foreclosure Action. *Id*. And the Movants state that "[t]he trustee's powers and rights are governed by Bankruptcy Code section 704. Section 704 is exhaustive, but the Trustee does have the discretion to carry out these duties as the Trustee deems appropriate or prudent." *Id*.

The Movants also note that the Chapter 7 Trustee has already exercised their discretion by electing not to intervene to seek to overturn the 2022 Judgment of Foreclosure and Sale. *Id*. Instead, in Mr. Ranasinghe's main bankruptcy case, the Chapter 7 Trustee reviewed the Stay Relief Motion and stated their lack of opposition to that motion. *See* ECF entry dated November 10, 2023. And the Movants suggest that in coming to that decision, the Chapter 7 Trustee presumably reviewed Mr. Ranasinghe's accompanying opposition to the Stay Relief Motion, including his arguments with respect to the Note and 2022 Judgment of Foreclosure and Sale, and determined not to intervene. *See* Summ. Judg. Mot. at 11. And, they add, the Chapter 7 Trustee has not intervened in this adversary proceeding. *Id*.

*Mr. Ranasinghe's Arguments in Opposition to Summary Judgment*

Mr. Ranasinghe opposes the Summary Judgment Motion. In his Opposition, Mr. Ranasinghe acknowledges that based on the parties' Stipulation, the First and Second Claims for Relief are now moot. Summ. Judg. Opp. at 5. And he enumerates eleven arguments – denominated "Argument I" through "Argument XI" – as to why the Summary Judgment Motion should be denied. *See* Summ. Judg. Opp. at 6-15.

First, Mr. Ranasinghe responds that the Defendants and Movants here have no power to litigate because they are trustees for their respective mortgage-backed securities, but have not submitted a proper pooling and servicing agreement to show their authority to litigate on the trust's behalf. Summ. Judg. Opp. at 6. As such, he asserts, the Movants may not seek summary judgment without first establishing their capacity to act as trustees. Summ. Judg. Opp. at 7.

Second, Mr. Ranasinghe responds that the Defendants and Movants have "not proved which defendant was the actual trustee of Morgan Stanley Mortgage Loan Trust 2007-11AR," or, in substance, the identity of the trustee for the mortgage-backed securities. Summ. Judg.

Opp. at 8. He states that one defendant is "U.S. Bank National Association as trustee for Morgan Stanley Mortgage Loan Trust 2007-11AR, Mortgage pass-through certificates, series 2007-11AR" and the other is "U.S. Bank National Association, Successor-In-Interest to Bank of America, N.A, [sic] Successor by Merger to LaSalle Bank National Association, As Trustee for Morgan Stanley Mortgage Loan Trust 2007-11AR." *Id*. And Mr. Ranasinghe asserts that "[t]he movant should present a copy of the trust agreement to see who was the actual trustee in [Morgan Stanley Mortgage Loan Trust 2007-11AR]." *Id*.

Mr. Ranasinghe's third response is that the 2012 Foreclosure Action precludes the 2016 Foreclosure Action, because the parties litigated the issue of standing in the 2012 Foreclosure Action and the state court decided in that action, and on the merits, that U.S. Bank did not have standing. Summ. Judg. Opp. at 8-10.

Mr. Ranasinghe's fourth response is similar to his third. He asserts that the 2016 Foreclosure Action was not litigated on its merits, but instead, was a default judgment. Summ. Judg. Opp. at 11. He suggests, in substance, that in view of that default, the 2016 Foreclosure Action decision is not a decision on the merits and cannot have any preclusive effect in this adversary proceeding. *Id*. And Mr. Ranasinghe states that the decision in the 2016 Foreclosure Action is not final, and is currently on appeal to the New York Supreme Court Appellate Division, Second Department, Index Number 2022-09025. *Id*.

In his fifth response, Mr. Ranasinghe asserts that he "did not sign the Note and his debt was a personal loan, therefore [the] foreclosure action cannot proceed." Summ. Judg. Opp. at 11. As "[a]ll personal Loans [are] discharged in Bankruptcy," Mr. Ranasinghe maintains that his debt to U.S. Bank was discharged in his bankruptcy case. Summ. Judg. Opp. at 12.

In his sixth response, Mr. Ranasinghe argues, in substance, that the *Rooker-Feldman* doctrine does not preclude him from seeking relief in this adversary proceeding because U.S. Bank has not proven that the 2016 Foreclosure Action is sufficiently identical to this adversary proceeding. *See* Summ. Judg. Opp. at 12. He states, "[t]he defendant has failed to prove that his case was prevent[ed from review in] Federal Court." *Id*. And he states that "[w]hen Two identical cases [are] decided, the defendant has the burden of pro[ving] that his case [is] likely to prevent the Federal Court from reviewing the State Court decisions." *Id*.

In his seventh response, Mr. Ranasinghe asserts that U.S. Bank filed "two different sets of Mortgage Notes" in each of the 2012 Foreclosure Action, the 2016 Foreclosure Action, and the Stay Relief Motion. Summ. Judg. Opp. at 12. *See* Summ. Judg. Opp. at 12-14. He states that in the 2012 Foreclosure Action, U.S. Bank did not attach any proof of assignment of the Note. *See* Summ. Judg. Opp. at 13. But, he argues, in the 2016 Foreclosure Action and the Stay Relief Motion, U.S. Bank presented a copy of the assignment of the Note from First National to U.S. Bank and from Ocwen to U.S. Bank. *Id.*

In particular, Mr. Ranasinghe states that in the 2016 Foreclosure Action, U.S. Bank submitted three documents:

> This complaint included:
>
> (a) a copy of the original Note
>
> (b) a copy of a Allonge from . . . First National Bank of Arizona (Amy Hawkins) to U.S. Bank National Association as trustee for Morgan Stanley Mortgage Loan Trust 2007-11AR, Mortgage pass-through certificates, series 2007-11AR
>
> (c) a Copy of the Allonge from U.S. Bank National Association as trustee for Morgan Stanley Mortgage Loan Trust 2007-11AR, Mortgage pass-through certificates, series 2007-11AR (by OCWEN) to U.S. Bank National Association, Successor-In-Interest to Bank of America, N.A, Successor by Merger to Lasalle Bank National Association, As Trustee for Morgan Stanley Mortgage Loan Trust 2007-11AR.

Summ. Judg. Opp. at 13 (emphasis in original).

And Mr. Ranasinghe states that U.S. Bank submitted these same three documents together with a fourth document, the "(d) Copy of the Allonge First National Bank of Arizona (Amy Hawkins) to First National Bank of Nevada without recourse (e) On the same Allonge: First National Bank of Nevada to Pay to the order (No Name) without recourse." Summ. Judg. Opp. at 14. He concludes that U.S. Bank "filed a new set[] of Allonge to the Bankruptcy Court when it filed the [Stay Relief Motion]." *Id.*

Next, in his eighth response, Mr. Ranasinghe asserts that U.S. Bank has failed to respond to discovery requests that he has served seeking information as to why it submitted two different sets of notes to New York State Court in the 2012 Foreclosure Action, the 2016 Foreclosure Action, and now to this Court. Summ. Judg. Opp. at 14-15. He requests that the Movants comply with his discovery demands, including his demand for a deposition. Summ. Judg. Opp. at 15.

In his ninth response, Mr. Ranasinghe argues that he is "entitled to inquire why the [D]efendants submitted two sets of Mortgage Notes to the Bankruptcy Court as they were not the original lender." *Id.* And he asserts that "[t]his new note filed in the Bankruptcy [C]ourt . . . [e]stablishe[s] that the defendants have filed incorrect and false documents and obtained the [2022 Judgment of Foreclosure and Sale] by fraud." *Id.*

Finally, Mr. Ranasinghe's tenth and eleventh responses concern his bankruptcy discharge. In his tenth response, Mr. Ranasinghe reasons that he has received an order of discharge, and "creditors have no legally enforceable action to collect discharged debt." *Id.* And in his eleventh response, Mr. Ranasinghe lists the creditors that the Court has informed about his discharge. Summ. Judg. Opp. at 15-16.

*The Movants' Arguments in the Supplemental Motion for Summary Judgment*

Pursuant to the Order Restoring Motion, on April 10, 2026, the Movants filed their Supplemental Motion for Summary Judgment. Supp. Summ. Judg. Mot.

In the Supplemental Motion for Summary Judgment, the Movants state that Mr. Ranasinghe's appeal of the 2022 Judgment of Foreclosure and Sale to the New York Supreme Court Appellate Division, Second Department, was stayed due to Mr. Ranasinghe's Chapter 7 bankruptcy case. Supp. Summ. Judg. Mot. at 2. As a result, the Movants characterize the 2022 Judgment of Foreclosure and Sale as "not final and unappealable." *Id.*

The Movants request that this Court allow the New York Supreme Court Appellate Division, Second Department, to determine the outcome of the 2022 Judgment of Foreclosure and Sale because the matters were "fully addressed at the trial level and pending," and the Appellate Division is familiar with the issues and the applicable law. Summ. Judg. Supp. Mot. at 3. The Movants argue that "[a]bstention is warranted here because the issues relate to New York state law." *Id.* The Movants also refer to the principles of federalism and comity, asserting that the state court has a strong interest in adjudicating disputes involving real property rights within its jurisdiction and is well positioned to consider the issues of law and fact raised in this appeal. Summ. Judg. Supp. Mot. at 3-4.

Alternatively, the Movants request that the Court grant the Summary Judgment Motion, but without prejudice to Mr. Ranasinghe challenging the mortgage loan in this Court "after the state courts have fully addressed the foreclosure judgment." Supp. Summ. Judg. Mot. at 4.

*Mr. Ranasinghe's Arguments in the Supplemental Opposition*

On the same day and pursuant to the same Order Restoring Motion, Mr. Ranasinghe filed Supplemental Opposition in support of his previous Opposition to the Summary Judgment Motion. Supp. Opp. Mr. Ranasinghe agrees that the appeal is still pending and sets forth several

reasons why he should prevail in the Appellate Division, including, among others, that the Movants did not provide sufficient notice of the 2016 Foreclosure Action as required by Section 1304 of New York Real Property Actions and Proceedings Law, that the Movants did not have standing as plaintiffs in the 2016 Foreclosure Action because they were not the lenders, that the Movants committed fraud by fabricating an allonge which was not disclosed during the 2022 Foreclosure Action, and that the Movants did not timely file a reply brief in the appeal. Supp. Mot. Summ. Judg. Opp. at 2-3.

With respect to the Third Claim for Relief, Mr. Ranasinghe explains that he "seeks the Court to issue an order to the Bankruptcy Trustee to intervene [in the 2016 Foreclosure Action] as [an] interest[ed] party to dismiss the foreclosure action." Supp. Opp. at 7. He asserts that he has listed other creditors in his creditor matrix, and that the Chapter 7 Trustee should "avoid the auction on behalf of the other creditors pursuant to 11 U.S.C[.] § 544." Supp. Opp. at 7, 11. Mr. Ranasinghe also argues that the Court should grant this relief because the Movants submitted different documents in the 2016 Foreclosure Action leading to the 2022 Judgment of Foreclosure and Sale, and the Stay Relief Motion, rendering the 2022 Judgment of Foreclosure and Sale "unenforceable and void." Supp. Opp. at 8. And Mr. Ranasinghe argues the Court should grant this relief because of a deficient chain of assignments. Supp. Opp. at 8-11.

With respect to the Fourth Claim for Relief, Mr. Ranasinghe asks the Court to require the Movants to prove their claim by a preponderance of evidence pursuant to Section 274 of the Uniform Voidable Transaction Act. Supp. Opp. at 12. He asserts once more that the Movants "ha[ve] violated the New York State law for foreclosure procedure by producing fabricated Allonges" and that the Movants "[have] no right to commence the [2016 Foreclosure Action] in the State Court." *Id.* Finally, Mr. Ranasinghe states that the *Rooker-Feldman* doctrine is not

applicable to the facts of this case and that this Court "has power either [to] undo the Foreclosure auction or to issue declaratory judgment declaring that the creditor has no legal authority for the [m]ortgage of the said property." Supp. Opp. at 13.

*Mr. Ranasinghe's Arguments in His Opposition to the Supplemental Motion for Summary Judgment*

On April 24, 2026, Mr. Ranasinghe filed Opposition to the Supplemental Motion for Summary Judgment. Opp. to Supp. Summ. Judg. Mot. In this Opposition, Mr. Ranasinghe argues first that the Court should not consider the Movants' request for abstention because the Movants did not raise this argument in the original Summary Judgment Motion. Opp. to Supp. Summ. Judg. Mot. at 3.

Next, Mr. Ranasinghe reiterates that the Movants made misrepresentations to this Court by submitting three different sets of loan documents in the 2012 Foreclosure Action, the 2016 Foreclosure Action, and the Stay Relief Motion. Opp. to Supp. Summ. Judg. Mot. at 5. And again, Mr. Ranasinghe asserts that the chain of assignments is deficient, and that making misrepresentations to the Court "constitutes a serious Bankruptcy Code violation, likely triggering severe [c]ivil and [c]riminal [p]enalties for [b]ankruptcy [f]raud, [p]erjury, and [f]raud upon the court." Opp. to Supp. Summ. Judg. Mot. at 11. Due to the dismissal of the 2012 Foreclosure Action, Mr. Ranasinghe also argues that the Movants should be judicially estopped "[from] asserting a legal or factual position in a proceeding[] that directly contradicts a stance" maintained in the 2012 Foreclosure Action. Opp. to Supp. Summ. Judg. Mot. at 12.

As to his argument that there was a deficient chain of assignments, Mr. Ranasinghe's position is that the Movants "were not the secured creditors," and therefore, dismissal of this Adversary Proceeding would allow the Movants to wrongly sell the Property, and prejudice other creditors. Opp. to Supp. Summ. Judg. Mot. at 15.

And finally, Mr. Ranasinghe addresses the relief that he seeks in the Third Claim for Relief and the Fourth Claim for Relief. He requests the Court to order the Movants to "return the Property pursuant to 11 U.S.C[.] § 542 . . . and 11 U.S.C[.] § 522." Opp. to Supp. Summ. Judg. Mot. at 17. He states that the Court may order the turnover of property belonging to the estate "to reverse a foreclosure sale if the property was improperly transferred." *Id.*

## **The Applicable Law**

### *Consideration and Construction of Pro Se Submissions*

At the outset, it is worth noting that the Amended Complaint and Opposition to the Motion for Summary Judgment were filed by Mr. Ranasinghe's counsel, on December 5, 2023, and July 1, 2025. About four months later, on October 29, 2025, Mr. Ranasinghe's counsel requested to withdraw from representing Mr. Ranasinghe, and Mr. Ranasinghe has effectively represented himself since that time, including at the December 1, 2025, argument on this Summary Judgment Motion.

This matters because special consideration and rules of construction are appropriate in the assessment of filings and requests for relief, and by extension, the arguments, that are made by *pro se* parties. As the Second Circuit has observed

> a *pro se* litigant is entitled to "special solicitude," that a *pro se* litigant's submissions must be construed "liberally," and . . . such submissions must be read to raise the strongest arguments that they "suggest." At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not "consistent" with the *pro se* litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by *pro se* litigants," and that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law."

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citations omitted). *Cf. Goode v. Cook*, 2025 WL 816302 at *4 (2d Cir. Mar. 14, 2025) (finding that where the plaintiff was represented by counsel in the filing of the complaint, and then responded *pro se* to a motion

for summary judgment, *Triestman* did not require the court to liberally construe the complaint).

*The Summary Judgment Standard*

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056, provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the initial burden of demonstrating the absence of a genuine dispute as to any material fact, and all of the inferences to be drawn from the underlying facts must be viewed by the court in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 249, 255; *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (observing that the court's role is "to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments").

As the Second Circuit has recently observed:

> To warrant summary judgment in their favor, defendants must demonstrate that "there is no genuine dispute as to any material fact and [that they are] entitled to judgment as a matter of law." *Hancock v. County of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018). And to survive a defendant's motion for summary judgment, "the plaintiff can no longer rest on the complaint's allegations," but must instead "produce evidence showing the presence of a genuine issue [of material fact] . . . that would warrant resolution by trial." *Lugo v. City of Troy*, 114 F.4th 80, 87-88 (2d Cir. 2024).

*Miller v. Lamanna*, 169 F.4th 118, 122 (2d Cir. 2026) (alteration and omission in original).

And as the Supreme Court has stated, the non-moving party "must do more than simply

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must present "significant probative evidence" that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249 (quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). *See Anderson*, 477 U.S. at 249-50 (observing that "if the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted").

As this Court has noted, statements in the pleadings, standing alone, do not meet this burden. *In re Allou Distribs., Inc.*, 446 B.R. at 49. Rather, "[e]stablishing such facts requires going beyond the allegations of the pleadings as the moment has arrived to 'put up or shut up.'" *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 117 (S.D.N.Y. 2008) (quotation marks omitted) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *aff'd*, 370 F. App'x 192 (2d Cir. 2010), *cert. denied*, 540 U.S. 811 (2003)). This means that "[u]nsupported allegations in the pleadings . . . cannot create a material issue of fact." *In re Eugenia VI Venture Holdings*, 649 F. Supp. 2d at 117.

"Rule 56(e) . . . requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. A party "must 'set forth' by affidavit or other evidence 'specific facts' to survive a motion for summary judgment . . . and must ultimately support any contested facts with evidence adduced at trial." *Bennett v. Spear*, 520 U.S. 154, 168 (1997) (quoting *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 561 (1992)).

And as this Court has observed, "'[t]he non-moving party may not establish that there is a genuine issue to be resolved at trial through mere allegations or denials of the adverse party's pleadings, but rather must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law.'" *Blake v. Fusco* (*In re Fusco*), 641 B.R. 438, 454 (Bankr. E.D.N.Y. 2022) (quoting *Beare v. Millington*, 2014 WL 1236750, at *3 (E.D.N.Y. Mar. 25, 2014), *aff'd*, 613 F. App'x 56 (2d Cir. 2015). *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (stating that "[a] party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory . . . or based on speculation" (citing *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996))). *See DeBernardo v. Lowe's Home Ctrs.*, 2023 WL 2291882, at *1 (2d Cir. Mar. 1, 2023) (stating that under Rule 56(a), "[s]ummary judgment should be granted if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,'" Fed. R. Civ. P. 56(a), and that "[a] genuine dispute exists when 'the evidence is such that a reasonable jury could decide in the non-movant's favor'" (quoting *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021))).

At the same time, "it is also well-recognized that 'the summary judgment rule would be rendered sterile . . . if the mere incantation of intent would operate as a talisman to defeat an otherwise valid motion.'" *Nisselson v. Empyrean Inv. Fund, L.P.* (*In re MarketXT Holdings Corp.*), 376 B.R. 390, 401 (Bankr. S.D.N.Y. 2007) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985)).

*The Rooker-Feldman Doctrine*

As this Court has observed, "[t]he *Rooker-Feldman* doctrine establishes limits on the

subject matter jurisdiction of federal courts." *Green v. Wells Fargo Bank, N.A.* (*In re Green*), 2020 WL 3412679, at *11 (Bankr. E.D.N.Y. June 18, 2020). This doctrine bars federal courts from reviewing and rejecting state-court judgments, brought by unsuccessful state-court litigants, rendered before the federal court proceedings commenced. *See Exxon Mobil*, 544 U.S. at 284. It is derived from two cases: *Rooker v. Fidelity Trust Co.*, 460 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *See Exxon Mobil Corp.*, 544 U.S. at 284-85. These cases "give effect to the principle that the federal courts have only original subject matter jurisdiction, and for this reason may not entertain direct or collateral attacks on a state court judgment." *In re Green*, 2020 WL 3412679**,** at *11.

And as the Supreme Court has observed, in defining the boundaries of the doctrine, "[t]he *Rooker-Feldman* doctrine . . . is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. *See In re Green*, 2020 WL 3412679, at *11.

As the Second Circuit has observed, "*Rooker-Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is 'inextricably intertwined' with the state judgment." *Hoblock v. Albany Cty. Bd. of Elections,* 422 F.3d 77, 86-87 (2d Cir. 2005). *See In re Green*, 2020 WL 3412679, at *11. And the *Rooker-Feldman* doctrine applies even where the state court's decision was in error, because [the doctrine] "'strip[s] federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions.'" *In re Ward,* 423 B.R. 22, 27 (Bankr. E.D.N.Y. 2010) (alteration in original) (quoting *Book v. Mortg. Elec. Registration Sys.,* 608 F. Supp. 2d 277, 288 (D. Conn. 2009)). *See In re Green*, 2020 WL 3412679, at *12.

Courts agree that the *Rooker-Feldman* doctrine applies when four elements are met:

> (1) the federal-court plaintiff lost in state court; (2) the plaintiff "must complain of injuries caused by a state-court judgment"; (3) the plaintiff "must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced."

*In re Green*, 2020 WL 3412679**,** at *12 (quoting *Buckskin Realty Inc. v. Windmont Homeowners Ass'n* (*In re Buckskin Realty Inc.*), 2017 WL 1130166, at *2 (Bankr. E.D.N.Y. Mar. 24, 2017) (quoting *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009))).

The Supreme Court has emphasized that *Rooker-Feldman* applies only if the federal suit is filed "after the state proceedings ended." *Exxon Mobil*, 544 U.S. at 291. And in *T.M.*, the Supreme Court recently explained that "the [*Rooker-Feldman* doctrine] bars suit when the state-court judgment at issue is subject to further review in state appellate proceedings." *T.M.*, 146 S. Ct. at 1744. *Cf. Hunter v. McMahon*, 75 F.4th 62, 70 (2d Cir. 2023) (stating that "if a federal-court plaintiff's state-court appeal remains pending when she files her federal suit, the state-court proceedings have not ended and *Rooker-Feldman* does not apply"), *abrogated by T.M.*, 146 S. Ct. at 1744; *Amelio v. Quicken Loan, Inc.*, 2026 WL 1876070, at *2 n.2 (2d Cir. June 30, 2026) (noting that *Hunter* was abrogated on other grounds by *T.M.*).

*The Res Judicata Doctrine*

As this Court and others have observed, the doctrine of *res judicata*, or claim preclusion, determines the preclusive effect of a state court judgment in a subsequent federal lawsuit. As the Supreme Court has explained, the doctrine is governed by the full faith and credit clause, which requires "all federal courts to give preclusive effect to state-court judgments whenever the courts of th[at] State . . . would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). And of course, the roots of this doctrine are in the Judiciary Code, which provides that "judicial proceedings in any

State "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State." 28 U.S.C. § 1738. *See In re Green*, 2020 WL 3412679 at *13.

That is, Judiciary Code Section 1738 directs federal courts to look to the preclusion law of the state in which judgment was rendered. Again, as the Supreme Court has explained:

> "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it . . . commands a federal court to accept the rules chosen by the State from which the judgment is taken."

*Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481-82 (1982). And here, that is the law of the State of New York. *See In re Green*, 2020 WL 3412679**,** at *13.

Under New York law, courts agree that several elements must be established for *res judicata* to apply. These are, "(1) there must be a final judgment in the first action; (2) that was rendered 'on the merits;' (3) between the same parties in both actions; and (4) concerning the same claims in both actions." *CIT Bank, N.A. v. Jach*, 2019 WL 1383850, at *5 (E.D.N.Y. Mar. 27, 2019) (quoting *In re Hunter*, 4 N.Y.3d 260, 269 (2005)). In addition, the party "'seeking to invoke *res judicata* to prove that the doctrine bars the second action'" bears the burden of proof on each of these elements. *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997). *See In re Green*, 2020 WL 3412679, at *13.

And courts likewise agree that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy,'" *Christen v. U.S. Bank N.A.*, 2024 WL 3443423, *8 (E.D.N.Y. July 17, 2024) (quoting *Josey v. Goord*, 9 N.Y.3d 386, 389-90 (2007)).

*See O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981).

Viewed another way, a principal objective of the doctrine of *res judicata* is to bring finality and closure to matters that have been fully addressed between the parties in another proceeding. As the Second Circuit has noted, "'[t]he doctrine of *res judicata* is based on the principle not only that the same parties in the same capacities should not be required to litigate anew a matter which might have been determined and settled in the former litigation, but that litigation should be determined with reasonable expedition.'" *Lasker v. UBS Sec. LLC*, 2009 WL 57137, at *4 (E.D.N.Y. Jan. 7, 2009) (quoting *McKinney v. Widner*, 746 S.W.2d 699, 705 (Tenn. Ct. App. 1987)), *aff'd*, 358 F. App'x 225 (2d Cir. 2009). *See In re Green*, 2020 WL 3412679**,** at *13.

In particular, it is well recognized under New York law that the fact that an appeal of a decision or judgment is pending does not foreclose a *res judicata* defense. As one court explained, "the pendency of an appeal does not deprive a challenged judgment of preclusive effect." *Arnold v. Beth Abraham Health Servs., Inc.*, 2009 WL 5171736, at *4 (S.D.N.Y. Dec. 30, 2009). As another court observed, "'the mere pendency of an appeal does not deprive a challenged judgment or order of its *res judicata* effect.'" *United States v. Meiri*, 754 F. Supp. 3d 432, 442 n.6 (emphasis added) (quoting *5512 OEAAJB Corp. v. Hamilton Ins. Co.*, 138 N.Y.S.3d 555, 558 (N.Y. App. Div. 2d Dep't 2020).

It is similarly well established that, even where a judgment by the state trial court may be reversed by the appellate division, a federal court "may retain jurisdiction following proceedings below in order to act on any motion arising from a reversal . . . but proceedings in the meantime should go forward, with preclusive effect given to the state court's determination of the [challenged] issue." *Petrella v. Siegel*, 843 F.2d 87, 90 (2d Cir. 1988).

And under New York law, "a default judgment is a judgment on the merits" for *res judicata* purposes. *Martins v. Wood*, 675 N.Y.S.2d 544, 545 (N.Y. App. Div. 2d Dep't 1998). *See Yoon v. Fordham Univ. Fac.*, 173 F. App'x 936, 939 (2d Cir. 2006) (finding that a dismissal for a plaintiff's failure to proceed at trial was "an adjudication on the merits with *res judicata* effect").

*The Collateral Estoppel Doctrine*

Another preclusion doctrine of salience here is collateral estoppel. The doctrine of collateral estoppel, or issue preclusion, addresses whether a party in a subsequent proceeding should be prevented from contesting an issue that was decided in an earlier proceeding. "The doctrine of issue preclusion 'is a narrower species of *res judicata*, [which] precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party.'" *Fequiere v. Tribeca Lending*, 2016 WL 1057000, at *8 (E.D.N.Y. 2016) (alteration in original) (quoting *Tsirelman v. Daines*, 19 F. Supp. 3d 438, 449 (E.D.N.Y. 2014)). *See In re Green*, 2020 WL 3412679**,** at *14.

As with *res judicata*, federal courts look to state law in determining whether to give preclusive effect to a determination made in a state court. That is, "'[a] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Mejia v. N.Y.C. Health & Hosps. Corp.*, 2014 WL 2115109, at *2 (S.D.N.Y. May 19, 2014) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)), *aff'd*, 622 F. App'x 70 (2d Cir. 2015). *See In re Green*, 2020 WL 3412679**,** at *14.

And also as with *res judicata*, several requirements must be met for a prior New York state court judgment to have preclusive effect. As the Second Circuit has observed:

> Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action.

*Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 65 (2d Cir. 2007) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455-56 (1985)). *See In re Green*, 2020 WL 3412679 at *14.

That is, as then-Judge Sotomayor of the Second Circuit noted, "'[u]nder New York law, collateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication.'" *Farrell v. Burke*, 449 F.3d 470, 482-83 (2d Cir. 2006) (quoting *Curry v. City of Syracuse*, 316 F.3d 324, 331 & n.4 (2d Cir. 2003)). *See In re Green*, 2020 WL 3412679, at *14.

And this result is not altered by the pendency of an appeal. Under New York law, "'the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding.'" *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) (quoting *Amica Mut. Ins. Co. v. Jones*, 445 N.Y.S.3d 820, 822 (N.Y. App. Div. 2d Dep't 1981)). *See 77 Water St., Inc. v. JTC Painting & Decorating Corp.*, 148 A.D.3d 1092 (N.Y. App. Div. 2d Dep't 2017) (holding that the trial court "properly invoked the doctrine of collateral estoppel to preclude the plaintiffs from relitigating [a contract issue when that issue] had already been determined against them in a prior order . . . in the underlying action").

<u>*Permissive Abstention*</u>

Judiciary Code Section 1334(c) provides two abstention doctrines: permissive abstention under Judiciary Code Section 1334(c)(1), and mandatory abstention under Judiciary Code Section 1334(c)(2). As the name suggests, the doctrine of permissive abstention permits a bankruptcy court to decline to exercise its jurisdiction to decide a matter under Section 1334(c)(1), even when jurisdiction is present. Permissive abstention may be warranted "in the

interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(2). *See In re Taub*, 413 B.R. 69, 79 (Bankr. E.D.N.Y. 2009) (describing the considerations for permissive abstention).

In considering whether permissive abstention under Section 1334(c)(1) is appropriate, courts apply the following factors:

> "(1) the effect or lack thereof on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (6) the existence of a right to a jury trial, and (7) prejudice to the involuntarily removed defendants."

*In re Korean Radio Broad., Inc.,* 2020 WL 2047990, at *7 (Bankr. E.D.N.Y. 2020) ("*KRBI*") (quoting *In re Residential Capital, LLC*, 488 B.R. 565, 577 (Bankr. S.D.N.Y. 2013).

Courts in this Circuit have also examined additional factors, including "the presence of a related proceeding commenced in state court or other non-bankruptcy court" and "the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties." *KRBI*, 2020 WL 2047990, at *7 (quoting *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 60 (S.D.N.Y. 2011)).

*The Trustee's Discretion Under Bankruptcy Code Section 704*

Bankruptcy Code Section 704 enumerates a plethora of duties and responsibilities for the trustee in a Chapter 7 bankruptcy case. *See* 11 U.S.C. § 704(a)(1)-(a)(12). These include that "[t]he trustee shall . . . investigate the financial affairs of the debtor." 11 U.S.C. § 704(a)(4). As the Supreme Court has explained, "[t]he estate is placed under the control of a trustee, who is responsible for managing liquidation of the estate's assets and distribution of the proceeds." *Law v. Siegel*, 571 U.S. 415, 417 (2014).

In carrying out these duties, it is generally the trustee, not the court, that charts the

appropriate course. That is, as one respected commentator has stated, the trustee "must proceed without any direction or order from the court." 6 Collier on Bankruptcy ¶ 704.07, at 704-22 (Richard Levin & Henry J. Sommer eds., 16th ed.) And as one appellate court noted, "the trustee has the sole responsibility to represent the estate, by bringing actions on its behalf to marshal assets for the benefit of the estate's creditors." *Fisher v. Apostolou*, 155 F.3d 876, 879 (7th Cir. 1998).

In addition, courts generally defer to a trustee's exercise of their business judgment in carrying out these duties. Again, as the Collier treatise states, "[g]enerally, the court will respect the trustee's business judgment in deciding that it is not worth pursuing assets." 6 Collier on Bankruptcy ¶ 704.03, at 704-13 (Richard Levin & Henry J. Sommer eds., 16th ed.) (citing *Frostbaum v. Ochs*, 277 B.R. 470 (E.D.N.Y. 2002)).

As one example, in considering whether to second-guess a trustee's decision to abandon collection efforts, the district court in *Frostbaum* explained:

> Because the cost of collection efforts, or litigating a claim, are often more burdensome than beneficial, the "business judgment" rule has been employed in a variety of bankruptcy contexts. . . . Under this rule, the trustee and the court in a bankruptcy proceeding "must exercise their discretion fairly in the interests of all who have had the misfortune of dealing with the debtor."

*Frostbaum*, 277 B.R. at 475 (quoting *Minges v. Zelman* (*In re Minges*), 602 F.2d 38, 43 (2d Cir. 1979)).

There are several reasons why a trustee generally exercises their judgment independent from the court and generally carries out their duties without specific or particularized direction or order from the court. 6 Collier on Bankruptcy ¶ 704.07, at 704-22 (Richard Levin & Henry J. Sommer eds., 16th ed.). One reason is that the trustee's investigation into the debtor's financial affairs "avoid[s] needless and costly duplication of effort and expense" by the court. *Id*. In

performing this role, the trustee provides a valuable practical benefit to the administration of a debtor's estate, conserves judicial resources, and optimizes judicial efficiency. *See, e.g., In re Curlew Valley Assocs.*, 14 B.R. 506, 511 (Bankr. D. Utah 1981) (reasoning that if parties questioned the trustee's business decisions, any motions brought by those parties "would impede the expeditious administration of estates").

Another reason is "to ensure that the court and the parties to the case are supplied with the facts essential to proper administration of the debtor's estate." 6 Collier on Bankruptcy ¶ 704.07, at 704-22 (Richard Levin & Henry J. Sommer eds., 16th ed.). That is, the trustee has the important role of investigating the debtor's estate, and presenting its findings to the court. The parties may benefit from learning new information, while leaving the role of considering and resolving disputed issues of law and fact to the court. *See, e.g.*, *In re Curlew Valley Assocs.*, 14 B.R. at 511 (in the context of a Chapter 11 trustee, observing that "[a] court which appoints a trustee and confers with him regularly and *ex parte* for the purpose of managing a business may find it difficult to rule impartially if those decisions in which it has participated are challenged.").

To be sure, if a trustee fails to perform its duties, parties in interest in a bankruptcy case have several avenues of recourse. "[A] creditor or a committee of creditors may seek court permission to pursue [an] action in the name of the trustee." 6 Collier on Bankruptcy ¶ 704.07, at 704-23 (Richard Levin & Henry J. Sommer eds., 16th ed.). Additionally, "[f]ailure to reasonably carry out [the trustee's] fiduciary duties makes a trustee liable for damages." 6 Collier on Bankruptcy ¶ 704.04, at 704-15 (Richard Levin & Henry J. Sommer eds., 16th ed.). As the *Frostbaum* court observed, a trustee's "failure to [carry out these duties] may result in sanctions against the Trustee; in fact, a Trustee may be held liable for the costs incurred in pursuing worthless claims." *Frostbaum*, 277 B.R. at 476 (citing *In re Keffas & Son Florist, Inc.*,

240 B.R. 466, 473-74 (Bankr. E.D.N.Y. 1999)).

*Recovery of a Fraudulent Transfer Under Bankruptcy Code Section 544*

Bankruptcy Code Section 544(b)(1) provides that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b)(1). To seek relief under Section 544(b)(1), "there must be an actual existing creditor holding an allowable unsecured claim who would have had that right outside of bankruptcy," sometimes called a "'golden' or 'triggering' creditor." *Mendelsohn v. Kovalchuk* (*In re APCO Merch. Servs., Inc.*), 585 B.R. 306, 314 (Bankr. E.D.N.Y. 2018) (quotation marks omitted) (quoting *MC Asset Recovery, LLC v. Southern Co.*, 2008 WL 11333464, at *3 (N.D. Ga. Dec. 11, 2006)).

Courts interpreting Section 544(b)(1)'s requirement that there be an actual existing creditor with an allowable unsecured claim generally agree that an unsecured creditor must file a proof of claim in the debtor's case. 5 Collier on Bankruptcy ¶ 544.06, at 544-23 (Richard Levin & Henry J. Sommer eds., 16th ed.) (citing *Miller v. Fallas* (*In re J & M Sales Inc.*), 2022 WL 532721, at *14-15 (Bankr. D. Del. Feb. 22, 2022)). That is, "[i]f there is no creditor against whom the transfer is voidable under the applicable law, the trustee is powerless to act under Section 544(b)(1)." 5 Collier on Bankruptcy ¶ 544.06, at 544-25 (Richard Levin & Henry J. Sommer eds., 16th ed.).

*Recovery of a Constructive Fraudulent Conveyance Under New York Debtor and Creditor Law Section 274*

New York Debtor and Creditor Law Section 274 applies to those creditors whose claims arose before the asserted fraudulent conveyance. It provides:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a

> reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

NY DCL § 274(a) (2025).

To establish a right to relief under NY DCL Section 274, a plaintiff must show the debtor made a transfer without receiving a reasonably equivalent value in exchange for the transfer, and must establish that the debtor was insolvent at the time of the transfer, or became insolvent as a result of the transfer. *See id.* "A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets." NY DCL § 271(a). NY DCL Section 271 further imposes a presumption of insolvency upon the debtor when the debtor is "generally not paying the debtors debts as they become due." NY DCL § 271(b). The presumption imposes upon the debtor the burden of proving it is more probable that the debtor is solvent rather than insolvent. *See id*.

The party seeking to set aside a transfer bears the burden of proving each element of the claim by a preponderance of the evidence. *Mendelsohn v. Jacobowitz*, (*In re Jacobs*), 394 B.R. 646, 660 (Bankr. E.D.N.Y. 2008). *See* NY DCL § 274(c).

**<u>Discussion</u>**

This adversary proceeding and Summary Judgment Motion call for the Court to consider competing arguments grounded in notions of preclusion asserted by Mr. Ranasinghe in the Amended Complaint and by the Movants in the Summary Judgment Motion.

In the Third Claim for Relief and Fourth Claims for Relief, Mr. Ranasinghe seeks relief against PHH and U.S. Bank on grounds, in substance, and among others, that he prevailed in the 2012 Foreclosure Action in New York Supreme Court, and that result should preclude any other outcome here. Mr. Ranasinghe states that "Defendants have not challenged or appealed against

the decision of the First foreclosure action by Supreme Court," and that, under the doctrine of collateral estoppel, "the Bankruptcy Court has to accept the decision of the first Foreclosure action and accept the issues that were resolved by the first foreclosure action." Am. Compl. ¶¶ 62, 67. *See* Am. Compl. ¶¶ 63-66. That is, having prevailed in that action, Mr. Ranasinghe argues that he should prevail in this adversary proceeding too. *See* Am. Compl. ¶¶ 62-67.

In the Summary Judgment Motion, PHH and U.S. Bank also point to doctrines of preclusion, including the *Rooker-Feldman* doctrine and the doctrines of *res judicata* and collateral estoppel. *See* Summ. Judg. Mot. at 8-9. The Movants point to a different action in New York Supreme Court, the 2016 Foreclosure Action, and the 2022 Judgment of Foreclosure and Sale that was entered in that case. *See* Summ. Judg. Mot. at 9-10. They note that Mr. Ranasinghe appeared in and contested that action, and "[a]fter the third failed attempt at vacating the Foreclosure Judgment, Debtor commenced the [bankruptcy case] shortly after the third denial by the Supreme Court to gain the benefit of the automatic stay." Summ. Judg. Mot. at 10. They also argue that "there can be no question that the Foreclosure Judgment is . . . final. There was no appeal taken from the Foreclosure Judgment, and the Debtor has not obtained any stay of the effectiveness of the Foreclosure Judgment either from the Supreme Court, or the Appellate Division." *Id*. So, the Movants assert, there is simply nothing left for this Court to decide with respect to Mr. Ranasinghe's claims against them, because the 2022 Judgment of Foreclosure and Sale is final, binding, and valid. *Id.*

And in the context of this Summary Judgment Motion, the Movants urge that "'there is no genuine dispute as to any material fact and that [they are] entitled to judgment as a matter of law'" on these claims. Summ. Judg. Mot. at 5 (quoting *Celotex*, 477 U.S. at 322).

This Summary Judgment Motion also calls for the Court to consider the role of the Chapter 7 Trustee, and relatedly, the role of the Court in supervising and directing the Chapter 7 Trustee's discretion in the performance of their duties, including the duty to investigate the financial affairs of the debtor and to marshal the assets of the estate.

*Whether the Movants Have Shown that this Court Lacks Subject Matter Jurisdiction To Consider Mr. Ranasinghe's Claims Under the Rooker-Feldman Doctrine*

A federal court's subject matter jurisdiction is the starting point for everything that it does. The *Rooker-Feldman* doctrine establishes limits on that jurisdiction by recognizing that the "'lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment.'" *Neshewat v. Salem* (*In re Salem*), 290 B.R. 479, 482 (S.D.N.Y. 2003) (quoting *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998)). This limitation has particular salience in the bankruptcy courts, because from time to time, parties to disputes here have previously litigated the same or a similar matter in the state court. And as a limitation on the court's subject matter jurisdiction, the boundaries established by *Rooker-Feldman* are not discretionary – they are mandatory.

The Movants argue that this Court lacks subject matter jurisdiction to consider Mr. Ranasinghe's claims under the *Rooker-Feldman* doctrine, among other reasons. Summ. Judg. Mot. at 8-9. To establish that this Court lacks subject matter jurisdiction, the Movants must show "(1) the federal-court plaintiff lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *In re Green*, 2020 WL 3412679, at *12 (quotation marks omitted).

Whether Mr. Ranasinghe, the federal court plaintiff, lost in state court. The first *Rooker-Feldman* element that the Movants must establish is that Mr. Ranasinghe, the "federal-court plaintiff" here, lost in state court. *Id*.

Here, the record shows that Mr. Ranasinghe lost in state court when the New York Supreme Court entered the 2022 Judgment of Foreclosure and Sale in the 2016 Foreclosure Action. *See* Summ. Judg. Mot. Exh. D (2022 Judgment of Foreclosure and Sale). This conclusion is also supported by the fact that Mr. Ranasinghe pursued several attempts to overturn the 2022 Judgment of Foreclosure and Sale, including a motion to vacate and a motion to reargue or for reconsideration. *See* Summ. Judg. Mot. at 10. That is, both the plain terms of the 2022 Judgment of Foreclosure and Sale and the events that followed show that Mr. Ranasinghe, the plaintiff here, lost in state court. *See* Summ. Judg. Mot. Exhs. D (2022 Judgment of Foreclosure and Sale), E (2016 Foreclosure Action State Court Docket).

And Mr. Ranasinghe's argument that PHH and U.S. Bank and this Court are precluded from considering the 2022 Judgment of Foreclosure and Sale by the dismissal of the earlier 2012 Foreclosure Action does not change this outcome. *See* Summ. Judg. Opp. at 11. Any questions concerning the effect of that action, and the decision of the New York State Supreme Court to dismiss that action without prejudice, were answered by the entry of the 2022 Judgment of Foreclosure and Sale in the subsequent 2016 Foreclosure Action. *See* Summ. Judg. Opp. Exhs. B (2012 Foreclosure Action Order of Dismissal); Summ. Judg. Mot. Exh. D (2022 Judgment of Foreclosure and Sale).

For these reasons, the Court finds and concludes that the Movants have established that the first element of the *Rooker-Feldman* test, that Mr. Ranasinghe, the federal court plaintiff here, lost in state court, is satisfied.

Whether Mr. Ranasinghe complains of injuries caused by a state court judgment. The second *Rooker-Feldman* element that the Movants must establish is that Mr. Ranasinghe complains of injuries caused by a state court judgment. *In re Green*, 2020 WL 3412679, at *12.

Here, the record shows that at the outset of this adversary proceeding, Mr. Ranasinghe asserted four claims for relief, including two – the First and Second Claims for Relief – that address, in substance, whether the Note and Mortgage secured by the Property – can be collected from him. *See* Am. Compl. ¶¶ 88-106. The parties agree that those claims have been addressed by the entry of a discharge in Mr. Ranasinghe's bankruptcy case, and they have been dismissed. *See* Stipulation at 2; Summ. Judg. Mot. at 2; Summ. Judg. Opp. at 7; So-Ordered Stipulation at 2.

And now, there remain two claims – Mr. Ranasinghe's Third Claim for Relief and Fourth Claims for Relief – that address, in substance, and by various means, the recovery of the Property by the Chapter 7 Trustee for the benefit of Mr. Ranasinghe and his creditors. *See* Am. Compl. ¶¶ 107-14. He seeks this relief in the form of a direction from this Court to the Chapter 7 Trustee, under Bankruptcy Code Section 544, and NY DCL Section 274. *Id.* That is, in these Claims for Relief, Mr. Ranasinghe seeks, in substance, to undo the consequences of the 2022 Judgment of Foreclosure and Sale in the 2016 Foreclosure Action. *See* Dec. 1, 2025, Tr. at 25:18-22. And he seeks that relief in response to the injury that was, he asserts, brought about by that judgment. *See* Am. Compl. ¶¶ 107-14.

For these reasons, the Court finds and concludes that the Movants have established that the second element of the *Rooker-Feldman* test, that Mr. Ranasinghe complains of injuries caused by a state court judgment, is satisfied.

Whether Mr. Ranasinghe invites this Court to review and reject that judgment. The third *Rooker-Feldman* element that the Movants must establish is that Mr. Ranasinghe invites this

Court's "review and rejection of" the 2022 Judgment of Foreclosure and Sale that was entered in the 2016 Foreclosure Action. *In re Green*, 2020 WL 3412679, at *12 (quotation marks omitted).

Here, as noted above, the record shows that, in substance, Mr. Ranasinghe seeks to assert the preclusive effect of the dismissal of the 2012 Foreclosure Action, and to use the tools of the bankruptcy process, to undo the consequences of the 2022 Judgment of Foreclosure and Sale entered in the 2016 Foreclosure Action. *See* Dec. 1, 2025, Tr. at 25:18-22. As stated in plain terms at the oral argument on this Summary Judgment Motion, Mr. Ranasinghe seeks "to undo the foreclosure auction." Dec. 1, 2025, Tr. at 25:21**;** *see* Dec. 1, 2025, Tr. at 25:18-22. The relief that he seeks would, in both substance and effect, require this Court to "review and reject" the 2022 Judgment of Foreclosure and Sale entered in the 2016 Foreclosure Action.

Mr. Ranasinghe's assertions that the 2016 Foreclosure Action "was not litigated on [the] merit[s]," that "the order of reference issued on default," and that the "second foreclosure action [is] not final but on Appeal," do not tip the balance in his favor on this element. Summ. Judg. Opp. at 11. At the outset, his assertion that the decision in that action was entered on default is not consistent with the record here. *Id.* Rather, the record shows that in the 2016 Foreclosure Action, Mr. Ranasinghe filed a motion to dismiss, a motion to vacate, and a motion for reconsideration. Summ. Judg. Mot. at 9-10, Exh. E (2016 Foreclosure Action State Court Docket). Mr. Ranasinghe contrasts this with the disposition of the 2012 Foreclosure Action, which, he asserts, was adjudicated on the merits. Summ. Judg. Opp. at 8. But here again, the record tells a different story, and shows that the 2012 Foreclosure Action was dismissed without prejudice. Summ. Judg. Opp. Exh. B (2012 Foreclosure Action Order of Dismissal). And in all events, the *Rooker-Feldman* doctrine is clear that if the necessary criteria are met, then a federal court lacks the subject matter jurisdiction to review even erroneous decisions made by a state

court. *In re Ward*, 423 B.R. at 27.

Mr. Ranasinghe also states that the 2022 Judgment of Foreclosure and Sale is presently on appeal in the New York Supreme Court Appellate Division, Second Department, at Index Number 2022-09025. Summ. Judg. Opp. at 11. But if anything, this would be yet another reason for this Court to decline to exercise jurisdiction in the situation of a state court final judgment that is on appeal. Viewed another way, the New York Supreme Court Appellate Division is the appropriate venue for review of the 2022 Judgment of Foreclosure and Sale, not this Court.

For these reasons, the Court finds and concludes that the Movants have established that the third element of the *Rooker-Feldman* test, that Mr. Ranasinghe invites this Court to review and reject the 2022 Judgment of Foreclosure and Sale entered in the 2016 Foreclosure Action, is satisfied.

<u>Whether the state court judgment was rendered before this adversary proceeding was commenced.</u> The fourth *Rooker-Feldman* element that the Movants must establish is that the state court judgment at issue – here, the 2022 Judgment of Foreclosure and Sale – was "rendered before this adversary proceeding commenced." *In re Green*, 2020 WL 3412679, at *27 (citations omitted).

Here, the record shows that the 2022 Judgment of Foreclosure and Sale was entered in the 2016 Foreclosure Action on March 8, 2022. *See* Summ. Judg. Mot., Exh. D (2022 Judgment of Foreclosure and Sale). And the record also shows that this adversary proceeding was commenced more than one year and eight months later, on November 30, 2023. *See* ECF No. 1.

The record also shows that even though an appeal of the 2022 Judgment of Foreclosure and Sale is presently pending, the *Rooker-Feldman* doctrine nevertheless applies, and bars this

Court from considering Mr. Ranasinghe's claims as set forth in the Amended Complaint, because this Court is a court of original, not appellate jurisdiction. *T.M.*, 146 S. Ct. at 1744, 1747.

For these reasons, the Court finds and concludes that the Movants have established that the fourth element of the *Rooker-Feldman* test, that the state court judgment at issue here was rendered before this action was commenced, is satisfied.

* * *

For these reasons, and based on the entire record, the Court finds and concludes that the Movants have shown that there is "no genuine dispute as to any material fact" so that they are "entitled to judgment as a matter of law" as to each element of the *Rooker-Feldman* test on these claims. Fed. R. Civ. P. 56(c). That is, the Movants have shown that, pursuant to the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction to consider Mr. Ranasinghe's Third Claim for Relief and Fourth Claim for Relief.

*Whether the Movants Have Shown that They Are Entitled to Summary Judgment Based on the Doctrine of Res Judicata*

The doctrine of *res judicata* determines the preclusive effect of a state court judgment in a subsequent federal action. This doctrine finds its roots in the full faith and credit clause of the U.S. Constitution and Section 1738 of the Judiciary Code. This Section provides that "judicial proceedings" in any State "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State." 28 U.S.C. § 1738. That is, federal law and the applicable state law – here, New York law – provide the framework for considering whether *res judicata* applies.

The elements of *res judicata* under New York law are well established. These are: "(1) there must be a final judgment in the first action; (2) that was rendered 'on the merits'; (3)

between the same parties in both actions; and (4) concerning the same claims in both actions." *CIT Bank*, 2019 WL 1383850, at *5 (quoting *In re Hunter*, 4 N.Y.3d at 269). The party "seeking to invoke *res judicata* to prove that the doctrine bars the second action'" bears the burden of proof on each of these elements. *Brown Media Corp.*, 854 F.3d at 157 (quoting *Computer Assocs. Int'l*, 126 F.3d at 369). *See In re Green*, 2020 WL 3412679**,** at *13.

The Movants argue that *res judicata* precludes this Court from revisiting the questions that were addressed in the 2016 Foreclosure Action and the 2022 Judgment of Foreclosure and Sale, including the question of the validity of the foreclosure sale, because each of the elements of *res judicata* are satisfied here. Summ. Judg. Mot. at 8. The Court considers these elements in turn.

<u>Whether there is a final judgment in the state court action.</u> The first element of *res judicata* that the Movants must establish is that a final judgment has been entered in the 2016 Foreclosure Action.

Here, the record shows that, as noted above, a final judgment in the form of the 2022 Judgment of Foreclosure and Sale has been entered in the 2016 Foreclosure Action. *See* Summ. Judg. Mot. Exh. D (2022 Judgment of Foreclosure and Sale). As the Movants correctly state, "there can be no question that the Foreclosure Judgment is . . . final. The Debtor has not obtained any stay of the effectiveness of the Foreclosure Judgment either from the Supreme Court, or the Appellate Division." Summ. Judg. Mot. at 10. And although there is an appeal of the Foreclosure Judgment pending, the "'mere pendency of an appeal does not deprive a challenged judgment . . . of its *res judicata* effect.'" *Meiri*, 754 F. Supp. 3d at 442 n.6 (quoting *5512 OEAAJB Corp.*, 138 N.Y.S.3d at 558).

For these reasons, the Court finds and concludes that the Movants have established that

the first element for *res judicata* to apply, that there is a final judgment in the form of the 2022 Judgment of Foreclosure and Sale in the 2016 Foreclosure Action, is satisfied.

Whether the final judgment in the prior action was rendered on the merits. The second element of *res judicata* that the Movants must establish is that the judgment in the prior action was rendered on the merits.

Here, the record shows that the court's decision in the 2016 Foreclosure Action, as set forth in the 2022 Judgment of Foreclosure and Sale, was a judgment on the merits of the parties' dispute. Summ. Judg. Mot. Exh. D (2022 Judgment of Foreclosure and Sale). To be sure, Mr. Ranasinghe argues that the 2022 Judgment of Foreclosure and Sale was not a judgment on the merits because it was a default judgment. Summ. Judg. Opp. at p. 11. But for the purposes of *res judicata*, "a default judgment is a judgment on the merits." *Martins*, 251 A.D.2d at 465. *See Yoon v. Fordham Univ. Fac.*, 173 F. App'x at 939 (finding that a dismissal for a plaintiff's failure to proceed at trial was "an adjudication on the merits with *res judicata* effect"). As noted above, Mr. Ranasinghe participated in that litigation, making a motion to vacate and a motion to reargue or for reconsideration, among other relief. *See* Summ. Judg. Mot. at 10. And here as well, Mr. Ranasinghe's reliance on the dismissal without prejudice of the 2012 Foreclosure Action does not change this result. *See* Summ. Judg. Opp. Exh. B (2012 Foreclosure Action Order of Dismissal).

For these reasons, the Court finds and concludes that the Movants have established that the second element for *res judicata* to apply, that the final judgment in the form of the 2022 Judgment of Foreclosure and Sale in the 2016 Foreclosure Action was rendered on the merits, is satisfied.

Whether the prior action was between the same parties. The third element of *res judicata*

that the Movants must establish is that the prior action was between the same parties that are present here. This is because where "the same parties in the same capacities" have litigated a matter, they "should not be required to litigate anew a matter which might have been determined and settled in the former litigation." *Lasker*, 2009 WL 57137, at *4.

Here, the record shows that the parties to this adversary proceeding – Mr. Ranasinghe and PHH and U.S. Bank – were also parties to the 2016 Foreclosure Action and the 2022 Judgment of Foreclosure and Sale. Summ. Judg. Mot. Exhs. D (2022 Judgment of Foreclosure and Sale), E (2016 Foreclosure Action State Court Docket). They had the opportunity to litigate, and did litigate, the same matters that are, in substance, before the Court in Mr. Ranasinghe's Third Claim for Relief and Fourth Claim for Relief. *Id.*

For these reasons, the Court finds and concludes that the Movants have established that the third element for *res judicata* to apply, that the prior action was between the same parties, is satisfied.

<u>Whether the prior action concerned the same claims.</u> The fourth element of *res judicata* that the Movants must establish is that the prior action concerned the same claims that are present here. Here as well, *res judicata* means that parties "should not be required to litigate anew a matter which might have been determined and settled in the former litigation." *Lasker*, 2009 WL 57137, at *4.

Here, the record shows that the matters addressed in the 2016 Foreclosure Action, leading to the entry of the 2022 Judgment of Foreclosure and Sale, are the same as the claims that, in substance, Mr. Ranasinghe seeks to address here. To be sure, the Third Claim for Relief and Fourth Claim for Relief appear to seek relief in the form of directions from the Court to the Chapter 7 Trustee, Mr. Ranasinghe acknowledges that these claims are, in substance, claims "to

undo the foreclosure auction." Dec. 1, 2025, Tr. at 25:21; *see* Dec. 1, 2025, Tr. at 25:18-22.

For these reasons, the Court finds and concludes that the Movants have established that the fourth element for *res judicata* to apply, that the 2016 Foreclosure Action and 2022 Judgment of Foreclosure and Sale concerned the same claims that Mr. Ranasinghe now sets forth in the Third Claim for Relief and Fourth Claim for Relief, is satisfied.

* * *

For these reasons, and based on the entire record, the Court finds and concludes that the Movants have shown that there is "no genuine dispute as to any material fact" so that they are "entitled to judgment as a matter of law" as to each element of *res judicata* on these claims. Fed. R. Civ. P. 56(c). That is, the Movants have shown that, pursuant to the doctrine of *res judicata*, they are entitled to summary judgment on Mr. Ranasinghe's Third Claim for Relief and Fourth Claim for Relief.

*Whether the Movants Have Shown that They Are Entitled to Summary Judgment Based on the Doctrine of Collateral Estoppel*

Collateral estoppel, like *res judicata*, applies in the appropriate circumstance to bar a party from attempting to relitigate "'an issue . . . identical to an issue already decided . . . in a previous proceeding in which that party had a full and fair opportunity to litigate.'" *Farrell*, 449 F.3d at 482-83 (quoting *Curry*, 316 F.3d at 331 & n.4). Collateral estoppel is a narrower doctrine in some respects than *res judicata*, and requires the court to examine whether the "'issue [was] clearly raised in a prior action . . . and decided against that party.'" *Fequiere*, 2016 WL 1057000, at *8 (quoting *Tsirelman*, 19 F. Supp. 3d at 449).

Federal courts look to state law to determine whether to give preclusive effect to a state court determination – here, the law of New York. And New York law provides that "collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the

prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d at 65 (citing *Kaufman*, 65 N.Y.2d at 455-56).

As with *res judicata*, the Movants argue that collateral estoppel prevents Mr. Ranasinghe from relitigating questions that were addressed and decided in the 2016 Foreclosure Action and the 2022 Judgment of Foreclosure and Sale, including the question of the validity of the foreclosure sale, because the elements of collateral estoppel are satisfied here. Summ. Judg. Mot. at 8-9. The Court considers these elements in turn.

<u>Whether the identical issue necessarily was decided in the prior action and is decisive of the present action.</u> The first element that the Movants must establish is that the identical issue that is present here was necessarily decided in the prior action – that is, the 2016 Foreclosure Action and the 2022 Judgment of Foreclosure and Sale. And of course, this calls for the Court to consider what was decided in the 2016 Foreclosure Action, and what is "decisive" here.

To be sure, Mr. Ranasinghe's Third Claim for Relief and Fourth Claim for Relief include several references to Bankruptcy Code provisions and the power of a Chapter 7 trustee that could conceivably appear to seek relief that is different than the relief awarded in the 2022 Judgment of Foreclosure and Sale. *See* Am. Compl. ¶¶ 107-14. But these averments simply do not add up to a claim for anything other than a claim "to undo the foreclosure auction." Dec. 1, 2025, Tr. at 25:21; *see* Dec. 1, 2025, Tr. at 25:18-22. .

In the Third Claim for Relief, Mr. Ranasinghe cites certain Bankruptcy Code provisions and seeks an "Order to the Trustee . . . to avoid any transfer of property of the debtor to the creditor that would be voidable under applicable law . . ." Am. Compl. at p. 14. He also refers to "materials and labor provided to the Town, for which the Debtor received no consideration,"

without providing any context or connection for these references to his claims or the Movants. Am. Compl. ¶ 109. That is, he does not identify the particular "materials," "labor," or "[t]own" to which he refers. But this Claim for Relief is, in substance, and as Mr. Ranasinghe acknowledged, a claim "to undo the foreclosure auction." Dec. 1, 2025, Tr. at 25:21; *see* Dec. 1, 2025, Tr. at 25:18-22.

And in the Fourth Claim for Relief, Mr. Ranasinghe cites NY DCL Section 274 and requests an "order [for] the Trustee to demand from the creditor to prove the claim by a preponderance of the evidence." Am. Compl. at p. 16. He also asks, without more, for "the [C]ourt to issue an order for the trustee to intervene in the [D]ebtor's estate." Am. Compl. ¶ 114. Again, it may well be that Mr. Ranasinghe is seeking an order from this Court to direct the Chapter 7 Trustee "to undo the foreclosure auction" and recover the Property. Dec. 1, 2025, Tr. at 25:21; *see* Dec. 1, 2025, Tr. at 25:18-22.

That is, in order for the Court to consider the relief that Mr. Ranasinghe seeks, in substance, in the Third Claim for Relief and the Fourth Claim for Relief, "to undo the foreclosure auction," it would be necessary to revisit the identical issues that were considered in the 2016 Foreclosure Action and decided in the 2022 Judgment of Foreclosure and Sale.

For these reasons, the Court finds and concludes that the Movants have established that the first element for collateral estoppel to apply, that the identical issue – the validity of the 2022 Judgment of Foreclosure and Sale – was decided in the prior action and would be decisive here, is satisfied.

<u>Whether Mr. Ranasinghe had a full and fair opportunity to litigate the issue in the 2016 Foreclosure Action.</u> The second element of collateral estoppel that the Movants must establish is

that the party to be estopped – here, Mr. Ranasinghe – "had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d at 65 (quotation marks omitted).

Here, the record shows that Mr. Ranasinghe appeared in and contested the 2016 Foreclosure Action. He pursued "a motion to dismiss . . . that was denied on December 9, 2021 . . . a motion to vacate . . . that was denied on October 11, 2022 . . . [and] a motion to reargue or for reconsideration . . . that was denied on March 30, 2023." Summ. Judg. Mot. at 9-10. That is, Mr. Ranasinghe had not only an *opportunity* to litigate the issues leading to the entry of the Judgment of Foreclosure and Sale, but *in fact* litigated those issues, over many years.

And the fact that the 2022 Judgment of Foreclosure and Sale was entered on default does not preclude this Court from giving the 2022 Judgment of Foreclosure and Sale preclusive effect. As one court has noted, "New York has long given default judgments collateral estoppel effect and considered them conclusive between the parties with regard to all matters essential to sustain the judgment." *Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co., Ltd.*, 470 F. Supp. 610, 617 (S.D.N.Y. 1979) (citations omitted).

To the same effect, this result is not altered by the pendency of an appeal of the 2022 Judgment of Foreclosure and Sale. Here again, the Second Circuit has held that "the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding.'" *DiSorbo*, 343 F.3d at 183 (quoting *Amica Mut. Ins. Co.*, 445 N.Y.S.2d at 822).

For these reasons, the Court finds and concludes that the Movants have established that the second element for collateral estoppel to apply, that Mr. Ranasinghe had a full and fair opportunity to litigate issues, including the validity of the 2022 Judgment of Foreclosure and Sale, in the 2016 Foreclosure Action, is satisfied.

* * *

For these reasons, and based on the entire record, the Court finds and concludes that the Movants have shown that there is "no genuine dispute as to any material fact" so that they are "entitled to judgment as a matter of law" as to each element of collateral estoppel on these claims. Fed. R. Civ. P. 56(c). That is, the Movants have shown that, pursuant to the doctrine of collateral estoppel, they are entitled to summary judgment on Mr. Ranasinghe's Third Claim for Relief and Fourth Claim for Relief.

*Whether the Movants Have Shown that this Court Should Abstain Pursuant to Judiciary Code Section 1334(c)(1)*

The Court next considers whether the Movants have shown that this Court should abstain in this bankruptcy case pursuant to Judiciary Code Section 1334(c). Here, courts undertake a case-by-case and fact-specific analysis to determine whether abstention is warranted "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1).

And here as well, the question of abstention under Section 1334(c)(1) is committed to the sound discretion of the bankruptcy court. *See In re Strathmore Group, LLC,* 522 B.R. 447, 457 (Bankr. E.D.N.Y. 2014) (stating that permissive abstention lies within the sound discretion of the bankruptcy court). The Court looks to the factors identified in *KRBI* to consider this question. These are:

> "(1) the effect or lack thereof on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (6) the existence of a right to a jury trial, and (7) prejudice to the involuntarily removed defendants."

*KRBI,* 2020 WL 2047990, at *7 (quoting *In re Residential Capital, LLC*, 488 B.R. at 577.

The Effect or Lack Thereof on the Efficient Administration of the Bankruptcy Estate. The first factor identified in *KRBI* is the effect that this Court's abstention would have on the efficient administration of the bankruptcy estate. *KRBI*, 2020 WL 2047990, at *7 (citing *In re Residential Capital, LLC*, 488 B.R. at 577).

Here, the record shows that Mr. Ranasinghe received a discharge in his Chapter 7 bankruptcy case. *See In re Keerthi Ranasinghe*, Case No. 23-42430, ECF No. 49 (Discharge). With the entry of the discharge, Mr. Ranasinghe's bankruptcy case is ready to be closed, save for the pendency of this adversary proceeding. As a result, this Court's abstention here would facilitate an efficient resolution of the bankruptcy estate, and any remaining questions can be resolved outside of bankruptcy.

Accordingly, this Court finds that this factor weighs in favor of abstention.

The Extent to Which State Law Issues Predominate Over Bankruptcy Issues. The second factor identified in *KRBI* is the extent to which issues of state law predominate over bankruptcy issues. *KRBI*, 2020 WL 2047990, at *7 (citing *In re Residential Capital, LLC*, 488 B.R. at 577).

Here, it is clear that state law issues predominate. The 2016 Foreclosure Action, and Mr. Ranasinghe's Claims for Relief largely concern matters of New York State foreclosure law. While Mr. Ranasinghe alleges an avoidance claim, the relief that he seeks, to "undo the foreclosure sale" is a matter that is better decided by New York State's appellate courts.

Accordingly, this Court finds that this factor weighs in favor of abstention.

The Difficulty or Unsettled Nature of the Applicable State Law. The third factor identified in *KRBI* is the difficulty or unsettled nature of the applicable state law. *KRBI*, 2020 WL 2047990, at *7 (citing *In re Residential Capital, LLC*, 488 B.R. at 577).

Here, the record shows that the applicable state law is neither difficult nor unsettled. Of course, state courts are more familiar with foreclosure actions, just as bankruptcy courts are more familiar with Chapter 7 bankruptcy cases. But in either context, and in either court, the applicable law should provide a straightforward framework for the parties to pursue their rights, whatever they may be.

Accordingly, this Court finds that this factor weighs neither in favor of nor against abstention.

<u>The Question of Comity</u>. The fourth factor identified in *KRBI* is the question of comity. *KRBI*, 2020 WL 2047990, at *7 (citing *In re Residential Capital, LLC*, 488 B.R. at 577).

Here, the record shows that there is a pending proceeding in New York Supreme Court, the applicable law is predominantly New York state law, and any appropriate relief can be obtained in that forum. New York state courts are experienced and expert in overseeing proceedings of this nature, and Mr. Ranasinghe has not identified any persuasive grounds for this Court to displace that proceeding with an adversary proceeding in this Court.

Accordingly, this Court finds that this factor weighs in favor of abstention.

<u>The Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case</u>. The fifth factor identified in *KRBI* is the degree of relatedness or remoteness of the proceeding to the main bankruptcy case. *KRBI*, 2020 WL 2047990, at *7 (citing *In re Residential Capital, LLC,* 488 B.R. at 577).

Here, the record shows that, at this stage in these proceedings, this adversary proceeding is not intrinsically related to Mr. Ranasinghe's Chapter 7 bankruptcy case. In that case, the Movants have obtained stay relief with respect to the Property. Additionally, the Chapter 7 Trustee has filed a report of no distribution, stating that "[he has] neither received any property

nor paid any money on account of this estate" and indicating that his work has been concluded. *In re Keerthi Ranasinghe*, Case No. 23-42430, ECF entry dated September 11, 2023. That is, this Adversary Proceeding concerns the Property, as to which the bankruptcy automatic stay is no longer in effect, and which is no longer subject to the Chapter 7 Trustee's administration.

Accordingly, this Court finds that this factor weighs in favor of abstention.

The Right to a Jury Trial. The sixth factor identified in *KRBI* is the existence of the right to a jury trial. *KRBI*, 2020 WL 2047990, at *7 (citing *In re Residential Capital, LLC*, 488 B.R. at 577).

Here, the record shows that at this stage in these proceedings, which have extended over several years, neither the Movants nor Mr. Ranasinghe has sought to assert a right to a trial by jury, in this forum or elsewhere.

Accordingly, this Court finds that this factor weighs neither in favor of nor against abstention.

Prejudice to the Involuntarily Removed Defendants. The seventh and final factor identified in *KRBI* is the question of prejudice to the involuntarily removed defendants – here, in effect, the Movants as the defendants in this Adversary Proceeding. *KRBI*, 2020 WL 2047990, at *7 (citing *In re Residential Capital, LLC*, 488 B.R. at 577).

Here, the record shows that the Movants prefer to return to state court to pursue their rights in the 2016 Foreclosure Action and appeal. The Movants argue that the Court has already granted stay relief, and that they want to avoid the "potential for conflicting holdings between the bankruptcy court and the state court regarding the mortgage loan." Supplemental Motion for Summary Judgment at 4. The Movants – and indeed Mr. Ranasinghe as well – would be prejudiced by the possibility of duplicative proceedings and conflicting holdings.

Accordingly, this Court finds that this factor weighs in favor of abstention.

* * *

For these reasons, and based on the entire record, the Court finds and concludes that the Movants have shown that this Court should abstain in this adversary proceeding pursuant to Judiciary Code Section 1334(c).

*Whether This Court Should Direct the Chapter 7 Trustee To Intervene in This Adversary Proceeding and Mr. Ranasinghe's Bankruptcy Estate*

In the Amended Complaint, Mr. Ranasinghe "demands the court to issue an order for the trustee to intervene in the debtor's estate." Am. Compl. ¶ 114. In their Summary Judgment Motion, the Movants respond that "the [Chapter 7] Trustee has exercised [its] discretion by NOT intervening." Summ. Judg. Mot. at 11. They also point to the Chapter 7 Trustee's absence of opposition to the Stay Relief Motion. *See In re Keerthi Ranasinghe*, Case No. 23-42430, ECF entry dated November 10, 2023 (stating that "Chapter 7 Trustee has reviewed the Motion to Lift Stay and does not oppose the motion.")

The Bankruptcy Code assigns a broad range of duties and responsibilities to the trustee in a Chapter 7 bankruptcy case. *See* 11 U.S.C. § 704(a)(1)-(a)(12). As the Supreme Court has explained, the trustee has "control" of the bankruptcy estate, and "is responsible for managing liquidation of the estate's assets and distribution of the proceeds." *Law*, 571 U.S. at 417. And as one appellate court has emphasized, "the trustee has the sole responsibility . . . [to bring] actions on its behalf to marshal assets for the benefit of the estate's creditors." *Fisher*, 155 F.3d at 879.

Under Bankruptcy Code Section 704, while the trustee's duties are broad, courts and commentators agree that the "trustee must proceed without any direction or order from the court." 6 Collier on Bankruptcy ¶ 704.07, at 704-22 (Richard Levin & Henry J. Sommer eds., 16th ed.). To the same effect, courts respect the trustee's exercise of their business judgment,

including with respect to steps to pursue and recover property of the estate. And "[g]enerally, the court will respect the trustee's business judgment in deciding that it is not worth pursuing assets." 6 Collier on Bankruptcy ¶ 704.03, at 704-13 (Richard Levin & Henry J. Sommer eds., 16th ed.) (citing *Frostbaum*, 277 B.R. at 470).

This Court declines Mr. Ranasinghe's invitation to direct the Chapter 7 Trustee to intervene in this Adversary Proceeding, or otherwise to direct the Chapter 7 Trustee in his administration of this Chapter 7 bankruptcy case, for several reasons.

First, it is simply not the role of the bankruptcy court to direct the work of a Chapter 7 trustee in their administration of a bankruptcy case. To be sure, the trustee may need to seek court approval for certain kinds of actions. These include, for example, to "use, sell, or lease, other than in the ordinary course of business, property of the estate," under Bankruptcy Code Section 363(b)(1); to "operate the business of the debtor for a limited period" under Bankruptcy Code Section 721; and to obtain unsecured, priority, and secured credit under Bankruptcy Code Sections 364(b) and 364(c). 11 U.S.C. §§ 363(b), 721. *See* 11 U.S.C. §§ 364(b), 364(c). But that is different than the court somehow usurping the role of the trustee and directing the administration of a Chapter 7 case.

Second, bankruptcy courts routinely – and appropriately – defer to the business judgment of the trustee in the administration of a Chapter 7 bankruptcy case. As one court explained, "it [is] appropriate to rely on the Trustee's business judgment in abandoning collection of [a] claim . . . [s]o long as this decision was not made arbitrarily, or in bad faith, . . . [and was made] for the benefit of the estate." *Frostbaum*, 277 B.R. at 475. And this is entirely consistent with the allocation of roles between the court and the trustee.

Moreover, the record of this case does not indicate that there is any grounds to question

whether the Chapter 7 Trustee has adequately performed his statutory duties and role in the Debtor's bankruptcy case. The Debtor does not allege facts to show, or even suggest, that the Chapter 7 Trustee has come up short in investigating the Debtor's affairs and marshaling any available assets for the benefit of the estate. Nor has he asserted that the Chapter 7 Trustee has engaged in any misconduct, manifested any ill will or intent, or otherwise failed effectively to perform his duties. To the contrary, Mr. Ranasinghe has been successful in his bankruptcy case and has received a discharge. *See In re Keerthi Ranasinghe*, Case No. 23-42430, ECF No. 49 (Discharge).

And in all events, as this Court has previously determined in the context of the Stay Relief Motion, there is no equity available for creditors in the Property, and therefore, no recovery for creditors would be realized if the Chapter 7 Trustee elected to pursue a sale of the Property. The Chapter 7 Trustee indicated as much when he stated that he did not oppose the Stay Relief Motion. *See In re Keerthi Ranasinghe*, Case No. 23-42430, ECF entry dated November 10, 2023 (stating that "Chapter 7 Trustee has reviewed the Motion to Lift Stay and does not oppose the motion."). As another judge in this court has observed, "a trustee generally may not administer an asset that is fully encumbered, as doing so cannot provide a benefit to unsecured creditors, but must instead abandon that asset." *In re All Island Truck Leasing Corp.*, 546 B.R. 522, 533 (Bankr. E.D.N.Y. 2016) (citing *In re KVN Corp., Inc.*, 514 B.R. 1, 5-6 (9th Cir. B.A.P. 2014)).

For these reasons, and based on the entire record, the Court finds that the Movants have shown that this Court should not direct the Chapter 7 Trustee to intervene in Mr. Ranasinghe's bankruptcy estate or this Adversary Proceeding.

*Whether the Movants Have Shown that They Are Entitled to Summary Judgment on the Constructive Fraudulent Conveyance Claim*

In the Third Claim for Relief, Mr. Ranasinghe also requests, in substance, that the Court direct the Chapter 7 Trustee "to avoid any transfer of property of the debtor to the creditor that would be voidable under applicable law . . . pursuant to 11 U.S.C. § 544(b)(1)." Am. Compl. at p. 14. He asserts, in substance, that Section 544(b)(1) permits a trustee to step into the shoes of a creditor holding an unsecured claim. Am. Compl. ¶ 108. He states that the Movants have an unsecured claim, because he did not sign the original promissory note:

> Assuming that the Creditor has a claim against the debtor's estate. It was unsecured debt as the debtor did not sign the Promissory Note and that would be voidable under applicable law. The trustee may recover for the benefit of the estate.

*Id*.

And Mr. Ranasinghe avers that the property in question is "the materials and labor provided by the Debtor to the Town, for which the Debtor received no consideration." Am. Compl. ¶ 109. He does not identify the "materials and labor" to which he refers, nor does he specify the "town." *Id*.

Finally, as to the applicable law, Mr. Ranasinghe refers to Article 10 and Section 270 of the New York Debtor and Creditor Law, as follows:

> Under Article 10 of the DCL, a "conveyance" is defined as "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." DCL § 270. The property alleged to have been conveyed in this case are the materials and labor provided by the Debtor to the Town, for which the Debtor received no consideration. While personal services provided by a judgment debtor are not included within the definition of conveyances under DCL § 270, the Trustee is not seeking a recovery based on any personal services provided by the Debtor.

*Id*.

In order to succeed on their Summary Judgment Motion as to this claim, the Movants

must demonstrate there is no genuine dispute as to a material fact as to at least one necessary element of Mr. Ranasinghe's claim. Mr. Ranasinghe's Third Claim for Relief under Bankruptcy Code Section 544(b)(1) requires "the existence of an actual creditor with an allowable claim against the debtor," 5 Collier on Bankruptcy ¶ 544.06, at 544-23 (Richard Levin & Henry J. Sommer eds., 16th ed.) (footnote omitted), that is unsecured, and that the allegedly fraudulent transfer is voidable as to that unsecured creditor under applicable law.

As one court has explained, "the trustee must demonstrate that there existed an actual unsecured creditor at the time of the transfer." *9281 Shore Rd. Owners Corp. v. Seminole Realty Corp.* (*In re 9281 Shore Rd. Owners Corp.*), 187 B.R. 837, 852 (E.D.N.Y. 1995). Viewed another way, such an "actual existing creditor holding an allowable unsecured claim" – or "'golden' or 'triggering' creditor," is necessary for the success of such a claim. *In re APCO Merch. Servs.*, 585 B.R. at 314) (quoting *MC Asset Recovery, LLC*, 2008 WL 11333464, at *3).

Here, the record shows that there is no genuine dispute as to a material fact with respect to the existence of an actual existing creditor – or "golden" creditor – holding an allowable unsecured claim at the time of the transfer, for several reasons.

At the outset, in order to succeed on this claim, Mr. Ranasinghe must demonstrate the existence of "an actual existing creditor holding an allowable unsecured claim." *In re APCO Merch. Servs.*, 585 B.R. at 314. But Mr. Ranasinghe's Schedule E/F, listing his Unsecured Creditors, lists no unsecured creditors at all. *See* Schedule E/F, ECF No. 17. And the Movants state, and Mr. Ranasinghe does not dispute, that he signed the mortgage, but not the note. *See* Summ. Judg. Opp. at 4; Dec. 1, 2025, Tr. 32:20-24.

In addition, even if this could somehow be overcome, so that Mr. Ranasinghe could pursue this claim and, in substance, contest the validity of U.S. Bank's mortgage on the property

as a fraudulent conveyance, these bare allegations, without more, are not sufficient to give rise to a genuine dispute as to a material fact. Instead, as the non-moving party, Mr. Ranasinghe "'must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law.'" *In re Fusco*, 641 B.R. at 454 (quoting *Beare*, 2014 WL 1236750, at *3); Summ. Judg. Opp. at 8.

And this he has not done. Instead, here, the record shows that the New York State Court entered a valid judgment of foreclosure and sale in favor of U.S. Bank, and this Court lacks subject matter jurisdiction to conduct, in effect, an appellate review of the 2022 Judgment of Foreclosure and Sale under the *Rooker-Feldman* doctrine. *See Exxon Mobil*, 544 U.S. at 284; Summ. Judg. Mot. Exh. D (2022 Judgment of Foreclosure and Sale). While the 2022 Judgment of Foreclosure and Sale was entered on default, a default judgment is nonetheless still a judgment. As the Supreme Court observed, "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district proceedings commenced and inviting district court review and rejection of those judgments" are improper and should be dismissed for lack of subject-matter jurisdiction. *Exxon Mobil*, 544 U.S. at 284. *See* Summ. Judg. Mot. Exh. D (2022 Judgment of Foreclosure and Sale).

Mr. Ranasinghe also points to the fact that the 2012 Foreclosure Action was dismissed without prejudice because in that action, the plaintiff did not provide documentation of the chain of assignments. *See* Summ. Judg. Opp. Exh. B (2012 Foreclosure Action Order of Dismissal). But this too does not change the outcome here. U.S. Bank, a different entity than the plaintiff in the 2012 Foreclosure Action, then commenced the 2016 Foreclosure Action in the name of the correct entity, and proved the chain of assignment. *See* Summ. Judg. Mot. Exh. D (2022 Judgment of Foreclosure and Sale).

Viewed another way, this Court is precluded from determining that U.S. Bank is an unsecured creditor where, in the Judgment of Foreclosure and Sale, the New York State Court has already determined that U.S. Bank is a secured creditor. *See id*. Nor has Mr. Ranasinghe come forward with "significant probative evidence" that a genuine issue of fact exists as to whether U.S. Bank's claim is unsecured. *Anderson*, 477 U.S. at 249. Based on the entire record, no "rational trier of fact" would be able to conclude that U.S. Bank is an unsecured creditor. *Matsushita*, 475 U.S. at 587. Without an unsecured creditor, the Chapter 7 Trustee is unable to step into the shoes of an unsecured creditor, and he is powerless to act under Bankruptcy Code Section 544(b)(1). *See* 5 Collier on Bankruptcy ¶ 544.06, at 544-3 (Richard Levin & Henry J. Sommer eds., 16th ed.) (footnote omitted).

Additionally, it is worth noting that Mr. Ranasinghe asks the Court to direct the Chapter 7 Trustee to bring a Bankruptcy Code Section 544(b)(1) claim. However, as the Movants correctly note, the Chapter 7 Trustee has presumably reviewed the docket and chosen not to intervene in this way in this Chapter 7 case. In light of the findings above that the Court will not direct the Chapter 7 Trustee to intervene, the fact that the Chapter 7 Trustee has in fact, not intervened, and that constructive fraudulent conveyance is a tool for the Chapter 7 Trustee, this Court will not direct the Chapter 7 Trustee to intervene and pursue a constructive fraudulent conveyance claim here.

For these reasons, and based on the entire record, the Court finds and concludes that the Movants have shown that there is "no genuine dispute as to any material fact" so that they are "entitled to judgment as a matter of law" as to each element of Bankruptcy Code Section 544(b)(1) on the Third Claim for Relief. Fed. R. Civ. P. 56(c). That is, the Movants have shown

that, pursuant to Bankruptcy Code Section 544(b)(1), they are entitled to summary judgment on Mr. Ranasinghe's Third Claim for Relief.

*Whether the Movants Have Shown that They Are Entitled to Summary Judgment with Respect to New York Debtor and Creditor Law Section 274(c) and the Fourth Claim for Relief*

In the Fourth Claim for Relief, Mr. Ranasinghe requests, in substance, that the Court direct the Chapter 7 Trustee "to demand from the creditor to prove the claim by a preponderance of the evidence," as required by DCL Section 274(c). Am. Compl. at p. 16. He requests, in substance, that "a creditor claiming relief under [DCL Section 274(a) or (b)] has the burden of proving the elements of the claim for relief by a preponderance of the evidence." Am. Compl. ¶ 113. And he "demands the court to issue an order for the trustee to intervene in the debtor's estate." Am. Compl. ¶ 114.

In response to the Fourth Claim for Relief, the Movants argue it is "devoid of any law that would be the basis for any relief this Court could grant." Summ. Judg. Mot. at 11. And they note that, here as well, it does not provide grounds for Mr. Ranasinghe to overturn the 2022 Judgment of Foreclosure and Sale entered in the 2016 Foreclosure Action. *Id.*

At the outset, it is fair to note that New York Debtor and Creditor Law Section 274(c) establishes, by its plain terms and as Mr. Ranasinghe asserts, the standard for the burden of proof applicable to a Section 274(a) or Section 274(b) claim – that is, that a Section 274 claim be proved "by a preponderance of the evidence." NY DCL § 274(c). This is not disputed by the Movants, nor could it be.

But that is different than allegations that set forth the elements of a claim under either of these statutory provisions. New York Debtor and Creditor Law Section 274(a) permits a creditor to void a transfer of assets under certain circumstances, including "if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange . . . and the debtor was insolvent

at that time or the debtor became insolvent as a result of the transfer or obligation." NY DCL § 274(a). And New York Debtor and Creditor Law Section 274(b) permits a creditor to void a transfer of assets "if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent." NY DCL § 274(b). Neither of these types of claims is asserted by Mr. Ranasinghe in the Amended Complaint.

And separately, here again, Mr. Ranasinghe seeks a direction that the Court "order the Trustee to demand from the creditor to prove the claim by a preponderance of the evidence" - that is, the applicable standard for the burden of proof in a Section 274 claim. But as described above, it is simply not the role of this Court to direct the work of the Chapter 7 Trustee in his administration of this bankruptcy case.

For these reasons, and based on the entire record, the Court finds and concludes that the Movants have shown that there is "no genuine dispute as to any material fact" so that they are "entitled to judgment as a matter of law" with respect to New York Debtor and Creditor Law Section 274(c). Fed. R. Civ. P. 56(c). That is, the Movants have shown that, pursuant to New York Debtor and Creditor Law Section 274(c), they are entitled to summary judgment with respect to New York Debtor and Creditor Law Section and Mr. Ranasinghe's Fourth Claim for Relief.

## Conclusion

For the reasons stated herein, and based on the entire record, the Motion of U.S. Bank and PHH for Summary Judgment Dismissing Adversary Amended Complaint with Prejudice is granted, as follows.

For the reasons stated herein, and based on the entire record, the Court finds and

concludes that the Movants have shown that, pursuant to the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction to consider Mr. Ranasinghe's Third Claim for Relief and Fourth Claim for Relief.

In the alternative, for the reasons stated herein, and based on the entire record, the Court finds and concludes that the Movants have shown that, pursuant to the *res judicata* doctrine, they are entitled to summary judgment.

In the alternative, for the reasons stated herein, and based on the entire record, the Court finds and concludes that the Movants have shown that, pursuant to the collateral estoppel doctrine, they are entitled to summary judgment.

In the alternative, for the reasons stated herein, and based on the entire record, the Court finds and concludes that the Movants have shown that this Court should abstain from proceeding pursuant to Judiciary Code Section 1334(c).

In the alternative, for the reasons stated herein, and based on the entire record, the Court finds and concludes that the Movants have shown that, pursuant to Bankruptcy Code Section 544(b)(1), they are entitled to summary judgment with respect to the Third Claim for Relief.

In the alternative, for the reasons stated herein, and based on the entire record, the Court finds and concludes that the Movants have shown that, pursuant to New York Debtor and Creditor Law Section 274(c), they are entitled to summary judgment with respect to New York Debtor and Creditor Law Section 274(c) and the Fourth Claim for Relief.

An order and judgment in accordance with this Memorandum Decision shall be entered simultaneously herewith.

**Dated: Brooklyn, New York**
**September 25, 2026**

Elizabeth S. Stong
United States Bankruptcy Judge